873 P.2d 118

Edward T. POST, and Constance Hendrick Post, husband and wife; the Joan Preston O'Neil Revocable Trust, dated February 22, 1989, Plaintiffs–Respondents, Cross–Appellants,

v.

Michael J. MURPHY; Jeray A. Holmes and Carolyn R. Holmes, husband and wife; William C. Higdon and Terry Higdon, husband and wife; Elmar Grabher and Rigmore Grabher, husband and wife, Defendants–Appellants, Cross–Respondents.

No. 20242.

Supreme Court of Idaho,
Boise.

April 4, 1994.

474

Luboviski, Wygle, Fallowfield & Williamson, P.A., Ketchum, for defendants-appellants, cross-respondents. Janet Wygle, argued.

Kneeland, Korb, Collier, Legg & Haukaas, Ketchum, for plaintiffs-respondents, cross-appellants. Bruce J. Collier, argued.

TROUT, Justice.

This case involves residential real property located in Ketchum, Idaho and certain recorded restrictions related to it, specifically, whether the restrictions preclude further subdividing of the property and whether, prior to January 1, 1995, these restrictions can be amended by less than unanimous vote of the property owners. Also at issue is whether a non-prevailing party can be awarded costs and fees based on a provision in the recorded restrictions under this Court's holding in *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 836 P.2d 511 (1992).

## FACTUAL BACKGROUND

The real property involved is comprised of lots 17–20, 24A, 25A, 26A, 27A, 27B and 27C (the "Lots") located in the Sun Valley Subdivision in Ketchum, Idaho. The Lots were subject to a Deed of Restrictions (the "Restrictions") signed and recorded by the rec-

ord owners on April 14, 1983, which Restrictions are the subject of this case.[1] Plaintiffs became owners of certain of the Lots (24A and 25A) after the Restrictions were recorded. It is not disputed that the Restrictions apply to the Lots.

In 1991, defendants, owners of lots 17, 18 and 19, applied to the City of Ketchum ("Ketchum") for permission to subdivide their lots. Defendants sought to subdivide these three lots into four lots, identified as the Sunny Bench Subdivision. Plaintiffs notified both defendants and Ketchum that such subdivision would violate the Restrictions. Ketchum, however, believed that the Restrictions were a private contractual matter between the parties and approved the Sunny Bench Subdivision. The subdivision plat was recorded by the defendants in December of 1991. It is undisputed that appellants planned to build single-family residences on each of the subdivided lots.

## PROCEDURAL HISTORY

In October of 1991, plaintiffs filed suit, seeking a declaratory judgment that the Restrictions prohibited any further subdivision of the Lots and that under its terms the Deed of Restrictions could only be amended prior to January 1, 1995 by unanimous vote of all owners of the Lots. The plaintiffs also sought a declaration that the Sunny Bench Subdivision Plat filed by the defendants was invalid and of no legal effect and sought injunctive relief enjoining the defendants from commencing, pursuing or completing construction upon any lot in the Sunny Bench Subdivision. In January, 1992, defendants filed an answer and counterclaim, seeking a declaration that the Restrictions did not prohibit further subdivision and that the Sunny Bench Subdivision did not violate the Restrictions.

Both sides sought summary judgment. On August 26, 1992, the trial court entered its Second Summary Judgment[2] in which it ordered, *inter alia*, that the Lots were subject

---

1. The owners of the Lots at the time the Deed of Restrictions was signed were Joseph and Sandra Koenig and Elmar Grabher, the latter being a defendant in this case.

2. The court had earlier, on June 18, 1992, entered a summary judgment in favor of the plaintiffs but had withdrawn this summary judgment by order dated June 26, 1992, pursuant to motions by both parties to augment and amend.

to the Restrictions and that "[t]he restrictive covenants expressly prohibit or by implication do not allow any action which would increase the residential density within the protected property to more than ten single family residences"; that the Sunny Bench Subdivision was invalid and of no legal effect as a result of the Restrictions; and that, pursuant to the terms of the Restrictions, revoking or amending the Restrictions prior to January 1, 1995 required a unanimous vote of all the Lots' owners. The trial court enjoined the defendants and their successors from pursuing any subdivision which would violate the Restrictions unless they validly revoked or amended the Restrictions with the required vote. The court also specifically enjoined the defendants and their successors from pursuing construction at the Sunny Bench Subdivision. The court dismissed the defendants' counterclaim with prejudice. Defendants appealed this decision on October 5, 1992.

On November 12, 1992, the court entered its Order and Judgment Re: Attorneys' Fees and Costs. The court determined the plaintiffs to be the prevailing party and awarded costs but not attorney fees. In addition, the court awarded attorney fees and costs to the defendants, based on a provision (paragraph 24) in the Restrictions which provides for recovery of costs and fees by a grantor who employs counsel in connection with the Restrictions, and on this Court's decision in *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 836 P.2d 511 (1992). On December 4, 1992, plaintiffs cross-appealed the award of fees to the defendants.

## I.

### THE TRIAL COURT DID NOT ERR IN HOLDING THAT THE RESTRICTIONS PROHIBITED THE SUNNY BENCH SUBDIVISION

In construing a restrictive covenant, which is in derogation of the common law right to use land, restrictions are not to be extended by implication to include any restriction not expressed clearly and doubts are to be resolved in favor of the free use of land. *Thomas v. Campbell*, 107 Idaho 398, 404, 690 P.2d 333, 339 (1984). Here, there is no specific prohibition in the Restrictions regarding subdividing. Without such an express prohibition, subdivision of the Lots, *per se*, is not prohibited. However, we find, for the reasons set out below, that the Restrictions explicitly prohibit an increase in density on the Lots beyond one residence per lot, effectively precluding subdivision.

The Restrictions provide:

1. No lot shall be used for any purpose including any retail or wholesale or commercial activity, *other than for the residents of one family* and its domestic servants, except that the Grantors, for the purpose of selling lots, may use any lot owned by them for a model home.

11. *No structure may be erected or maintained on any lot except one (1) single family dwelling house* with an interior living floor area ... of at least 1200 square feet, together with no more than two (2) detached outbuildings for use as garages, servants' quarters or guest houses. . . .

25. The lots of the subdivision subject to these restrictions are the following: 17, 18, 19, 20, 24A, 25A, 26A, 27A, 27B, 27C.

(Emphasis added). The question of whether a restrictive covenant is ambiguous is one of law, subject to plenary review by this Court. *Clark v. Saint Paul Property & Liab. Ins. Cos.*, 102 Idaho 756, 639 P.2d 454 (1981). A restrictive covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue. *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980). It is only if an ambiguity is found that any "construction" is necessary. Where there is no ambiguity, there is no room for construction; the plain meaning of the language governs. *Sun Valley Center for Arts & Humanities, Inc. v. Sun Valley Co.*, 107 Idaho 411, 413, 690 P.2d 346, 348 (1984).

Applying these standards, the provisions of the Restrictions are not ambiguous. These provisions clearly limit the ten lots specifically identified in the Restrictions to one single family residence per lot. Any building on subdivided lots which would result in more than one single family residence on a particular lot (and, therefore, more than ten residences on the Lots) is prohibited. Accord-

ingly, although subdivision of lots is not prohibited, *per se,* no dwelling may be erected on a subdivided portion if there is a dwelling on the remainder of the original lot. Effectively, therefore, appellants are prohibited from building additional houses on any subdivided lots. We find no error in the trial court's determination that the subdivision contemplated by appellants is prohibited, because the Restrictions prohibit any action which would increase the residential density within the protected property to more than one single family residence per existing lot. *See also Cadbury v. Bradshaw,* 43 Or.App. 33, 602 P.2d 289 (1979) (where a restrictive covenant similar to that in the Restriction did not specifically permit or prohibit subdivision, the court found the covenant prohibited subdivision because the covenant explicitly required that only one dwelling could be erected on any parcel. Thus, even if subdivision itself were allowed, buildings on subdivided lots were prohibited.)

## II.

### THE DISTRICT COURT DID NOT ERR IN HOLDING THAT THE RESTRICTIONS COULD ONLY BE AMENDED BEFORE JANUARY 1, 1995 BY UNANIMOUS VOTE OF ALL LOT OWNERS

■ The last paragraph of the Restrictions provides:

[t]hese covenants are to run with the land and shall be binding on all persons and all parties claiming under them until January 1, 1995, at which time said covenants shall be automatically extended for successive periods of ten (10) years unless by vote of two-thirds of the then owners of the lots it is agreed to change said covenants in whole or in part.

The trial court held that to amend the Restrictions before January 1, 1995, a unanimous vote of all lot owners was required. We agree. The Restrictions clearly state that only after January 1, 1995, may the Restrictions be amended by a two-thirds vote, and then only in accordance with its terms. Therefore, until January 1, 1995, a unanimous vote is required to amend them.

## III.

### THE DISTRICT COURT DID NOT ERR IN AWARDING ATTORNEY FEES TO A NON–PREVAILING PARTY BASED ON THE APPLICATION OF FARM CREDIT BANK OF SPOKANE V. WISSEL

■ The Restrictions provide:

24. In the event that the Grantors shall employ legal counsel in connection with or to enforce these covenants and restrictions, then the persons with respect to which such employment occurs shall pay all costs incurred, including reasonable attorneys' fees.

The trial court awarded attorney fees and costs to defendants even though the court found that plaintiffs were the prevailing party. It did so based on paragraph 24 and this Court's holding in *Farm Credit Bank of Spokane v. Wissel,* 122 Idaho 565, 836 P.2d 511 (1992).

■ In *Farm Credit* this Court considered a provision in a lease to the effect that if the lessor were to "find it necessary to bring suit or action under the terms of [the] lease, then the Lessee hereby agrees to pay the Lessor's reasonable attorney fees and costs of suit incurred in such suit or action." *Id.,* at 568, 836 P.2d at 514. The Court upheld the trial court's determination that there was no prevailing party in the case but reversed the trial court's determination that the lessor could not recover fees. The Court held that since the contractual provision did not require that the lessor be the prevailing party in order to recover fees, such would not be a requirement, as long as the only requirement specifically imposed by the provision—that the lessor found it necessary to bring suit— was satisfied. *Id.,* at 565, 836 P.2d at 511. "[W]here there is a valid contract between the parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorneys fees and costs." *Id.* at 568–69, 836 P.2d at 514–15. *Farm Credit* controls the costs and fees recovery of appellants in this case. The only requirement in

paragraph 24 of the Restrictions is that a grantor employ legal counsel in connection with the Restrictions. It is beyond question that this requirement was met since Elmar Grabher was both an original grantor and a defendant employing counsel in connection with the Restrictions. Contrary to plaintiffs' suggestion, it does not change the applicability of *Farm Credit* that in *Farm Credit* there was no prevailing party, while here plaintiffs prevailed on the legal issues. Under *Farm Credit*, unless the contractual attorney fees provision specifically requires such, no "prevailing party" requirement will be imposed on a contractual right to recover fees.[3]

In awarding fees to defendants, the trial court found that the fees requested by defendants were reasonable. The court observed that all defendants were represented by the same counsel, and that one of the defendants, Elmar Grabher, was one of the original grantors in the Deed of Restrictions. Thus, the contractual requirements of paragraph 24 were met. The court also found that the fact that one attorney represented all defendants and that the actual bill for legal services rendered may have been sent to a defendant who was not an original grantor did not change the application of *Farm Credit*. Further, the court found that the amount of fees would have been the same had Elmar Grabher been the only defendant.

The trial court's factual determinations regarding the fees cannot be said to be clearly erroneous and we will not disturb them on appeal. The trial court was involved in this case from its inception; it knew the issues involved in the case, had considered the attorneys' written work and oral arguments and had a sense of the amount of work the defendants' attorney had to put into the case. The trial court, therefore, was in a position to determine that had Grabher been the only defendant, the legal work entailed would have been the same and was in a better position than this Court to assess the scope of the legal work involved and the reasonableness of the fees requested.

Accordingly, we affirm the trial court's grant of summary judgment for respondents and its award of fees to appellants. Appellants are also entitled to fees on appeal, pursuant to paragraph 24 of the Restrictions. No fees are awarded to respondents, as this appeal was not frivolous or without foundation.

McDEVITT, CJ., and BISTLINE, JOHNSON and SILAK, JJ., concur.

---

3. For a restrictive covenant to bind subsequent grantees it must run with the land. In their briefs to this Court, plaintiffs state that the Restrictions run with the land. Because plaintiffs concede this issue, we do not consider it, and make no holding with regard to the question of whether the attorney fees provision runs with the land.