38 P.3d 609

**KIDD ISLAND BAY WATER USERS CO-OPERATIVE ASSOCIATION, INC., a non-profit corporation, Plaintiff–Counterdefendant–Appellant–Cross Respondent,**

**v.**

**Fred and Joan MILLER, husband and wife; Russ and Ruby Niles, husband and wife; Ben and Carol Kircher, husband and wife, Thomas Beaton, in his capacity as Trustee for the Thomas Patrick Beaton Living Trust; John and Norma Boisen, husband and wife, in their capacities as Trustees for the John M. Boisen, Sr. and Norma V. Boisen Living Trust; Ronald and Heide John, husband and wife; and Michael and Kathryn Wilson, husband and wife, Defendants–Counterclaimants–Respondents–Cross Appellants.**

No. 26797.

Supreme Court of Idaho,
Cd'A, October 2001, Term.

Dec. 26, 2001.

John F. Magnuson, Coeur d'Alene, for appellant. John F. Magnuson argued.

Scott W. Reed, Coeur d'Alene, for respondents. Scott W. Reed argued.

TROUT, Chief Justice.

Kidd Island Bay Water Users Cooperative Association, Inc. ("Kidd Island") appeals the district judge's decision declining to hold seven members who desired to withdraw from the Association ("Defendants") liable for a pro rata share of a loan taken out by Kidd Island. This issue hinges upon the interpretation of the term "commitments made" in I.C. § 30–3–41(2). Defendants cross appeal the district judge's award of prejudgment interest to Kidd Island on expenses for water service.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Kidd Island is a non-profit stock cooperative organized and existing under the laws of the State of Idaho. Kidd Island was formed for the purpose of developing a community water system to service the needs of seventy-five member lots.

In 1993, Kidd Island's water system became non-compliant with the Rules Governing Public Drinking Water Systems. In order to avoid the imposition of civil penalties, Kidd Island was required to enter into a series of Voluntary Consent Orders ("Consent Orders") with the Idaho Department of Health and Welfare, Division of Environmental Quality ("DEQ"). Pursuant to these Consent Orders, Kidd Island was required to develop and construct a new system compliant with all rules and regulations overseen and implemented by the DEQ, no later than December 30, 1994. This deadline, however, was extended on numerous occasions by the DEQ, and remained in effect through February, 2000.

In June of 1993, Kidd Island filed an application with the U.S. Department of Agriculture/Rural Development Association ("USDA"), seeking a federally funded loan that would enable Kidd Island to perform the obligations arising from the DEQ Consent Orders. In June of 1995, the USDA approved Kidd Island's application for assistance in the amount of $326,500 and reserved funds in that amount, subject to certain conditions. The USDA loan, however, did not close until February 1, 2000.

On August 26, 1995, after the USDA funds were reserved, Kidd Island held its annual meeting. At the meeting, members were informed that a well drilled, as part of the efforts to comply with the DEQ Consent Orders, had failed. The members were then informed of several ground water system alternatives that would comply with the DEQ mandate.

Between October of 1995 and January of 1996, the Defendants separately gave notice of their intent to withdraw from Kidd Island.

The reasons given by the Defendants for resignation included concerns over health, the cost of the proposed new system, and the delay in obtaining safe water. Kidd Island did not recognize the attempted withdrawals, conditioning withdrawal upon the Defendants' payment of their pro rata shares of the $326,500 loan reserved by the USDA. The Defendants refused to pay any portion of that amount.

Kidd Island did not begin construction on the new water system until August of 1999, and construction was finally completed in 2000. The system was funded by proceeds from the USDA reservation.

In November of 1997, Kidd Island filed a complaint against the Defendants seeking, *inter alia*, an order decreeing that each of the individual Defendants' attempted resignations to be contingent upon each Defendant paying their per lot, pro rata share of the USDA loan of $326,500. The district judge declined to hold Defendants liable for a pro rata share of the loan taken by Kidd Island, holding that the reservation of funds by the USDA was not a "commitment made" as that term is used in I.C. § 30–3–41(2). Kidd Island appeals this determination. Defendants cross appeal the district judge's award of prejudgment interest to Kidd Island on expenses for water service.

## II.

## STANDARD OF REVIEW

■ The district judge's decision involves mixed questions of law and fact: a factual determination was made as to what the parties did and what they intended; a legal determination was made as to whether that constituted a "commitment" within the meaning of I.C. § 30–3–41(2). Whether a statute applies to a given set of facts is a question of law. *Floyd v. Bd. of Comm'rs,* 131 Idaho 234, 237, 953 P.2d 984, 987 (1998). The interpretation of a statute is a question of law that is to be reviewed *de novo. V–1 Oil Co. v. Idaho State Tax Comm'n,* 134 Idaho 716, 718, 9 P.3d 519, 521 (2000); *Thomas v. Worthington,* 132 Idaho 825, 828, 979 P.2d 1183, 1186 (1999).

■ If the district judge's factual findings are supported by substantial and competent evidence, the appellate court will not disturb those findings. *Carney v. Heinson,* 133 Idaho 275, 985 P.2d 1137 (1999).

## III.

## DISCUSSION

**A. The district judge did not err in determining the members could leave the Association without bearing a pro rata share of the USDA debt.**

The Idaho Nonprofit Corporation Act, I.C. § 30–3–1 *et. seq.*, with regard to the resignation of a member, provides:

(1) A member may resign at any time. A person ceases to be a stockholder only when that person's shares of stock have all been disposed of.

(2) The resignation of a member, or the disposal of all stock of a stockholder, does not relieve the member from any obligations the member may have to the corporation as a result of obligations incurred or commitments made prior to resignation.

. . . .

I.C. § 30–3–41. The interpretation of the phrase "commitments made" is the central issue in this case.

1. *The EPA Consent Orders do not constitute a commitment made within the meaning of I.C. § 30–3–41*

■ Kidd Island argues that the Consent Orders entered into between Kidd Island and the DEQ fall within the meaning of "commitments made." Obviously, the term "commitments made" means something different than a monetary obligation because the statute also uses the phrase "obligations incurred." Further, the wording of the statute suggests "commitments made" applies only to commitments by a member to the corporation, not the corporation to other entities. Subsection 2 provides that "[t]he resignation of a member ... does not relieve the member from any obligations the member may have *to the corporation.*" I.C. § 30–3–41(2) (emphasis added).

The Defendants were not committed to pay Kidd Island for any particular type of water system. The Consent Orders at issue required Kidd Island to: (1) develop plans and specifications for a water system which is acceptable to DEQ and with complies with the Rules Governing Public Drinking Water Systems; (2) complete construction of the improvements in accordance with the plans and specifications as approved by DEQ; and (3) otherwise achieve full compliance with IDAPA 16.01.08300. If Kidd Island failed to comply with the terms of the Consent Orders, it remained subject to a civil enforcement action by the DEQ, which could include entry of a judicial decree ordering Kidd Island to specifically perform the obligations embodied in the Consent Orders. I.C. § 39–108(8). Thus, the moment Kidd Island and the DEQ entered into the Consent Orders, Kidd Island was committed to improve their water system.

How Kidd Island was to improve the water system, however, was undetermined. Kidd Island was committed to obtain clean water, but had not committed itself to a particular method. One alternative that would comply with the Consent Orders consisted of members drilling their own wells. In fact, at Kidd Island's general meeting in August of 1995, the Board presented the membership with various options on which to vote. One of the options presented included "doing nothing." The membership voted 17 to 0 to "remand to the Board for further study" of the various proposals. This vote did not grant unfettered authority to construct any compliant system at any cost; nor did the vote authorize the construction of any compliant water system under $326,500.

The Consent Orders here committed Kidd Island, not the individual members. The term "commitments made" cannot be interpreted to mean something as wide open as agreeing to assume any responsibility for any type of water system which the Board might select. Although Kidd Island may have been committed to the EPA to clean up its water system, that commitment changed over the course of time. Kidd Island was put on notice of its noncompliant water system in 1993, and it was not until 1996 when Kidd Island finally selected a water system that would comply with the Consent Orders. Section 30–3–41 clearly requires something more specific than a general obligation to be incurred sometime in the future.

Because the terms of the Consent Orders were very broad, providing numerous options to Kidd Island in order to comply, we agree with the district judge that the Consent Orders in this case do not constitute a "commitment made" within the meaning of I.C. § 30–3–41.

2. *The USDA loan reservation does not constitute a commitment made within the meaning of I.C. § 30–3–41*

The terms of a contract must be sufficiently definite and certain in order to be enforceable. *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 670 P.2d 51 (1983) (citing *Barnes v. Huck*, 97 Idaho 173, 540 P.2d 1352 (1975); *Dale's Service Company, Inc. v. Jones*, 96 Idaho 662, 534 P.2d 1102 (1975)). At the time of Defendants' attempted withdrawals, Kidd Island had not entered into a binding contract with the USDA for the loan. The USDA loan reservation was nothing more than the availability of funding. Kidd Island could have failed to meet the conditions of the loan or chosen to pursue other sources of funding. Therefore, because Kidd Island was not bound to the USDA loan at this time, neither were the Defendants.

Kidd Island points to Article X(6) of their bylaws, which grants the Board the authority to determine the nature, extent and cost of necessary capital improvements and determine each member's pro rata share thereof. Kidd Island suggests the Board undertook the process of obtaining funding pursuant to this, thus each Defendant should be liable for a pro rata share.

The fact that Kidd Island's bylaws granted the authority to determine each member's pro rata share is irrelevant. Kidd Island nowhere claims to have ever actually determined the amount for which each member was or would be obligated. Undertaking the process of obtaining funding does not equate with determining a member's pro rata share. The power alone to determine a pro rata share is insufficient without actually exercis-

ing that power. Therefore, the USDA loan reservation does not constitute a "commitment made."

## B. The district judge erred in awarding prejudgment interest to Kidd Island.

Section 28–22–104 of the Idaho Code provides for the award of prejudgment interest. Idaho Code § 28–22–104 provides in relevant part:

Legal rate of interest.

(1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:

. . .

2. Money after the same becomes due.

. . . .

Prejudgment interest awards are appropriate where the amount of liability is liquidated or capable of ascertainment by a mere mathematical calculation in order to fully compensate the injured party. *Doolittle v. Meridian Joint School Dist.,* 128 Idaho 805, 814, 919 P.2d 334, 343 (1996) (citations omitted).

The district judge awarded prejudgment interest to Kidd Island on January 2, 1996, on Defendants' pro rata share of expenses accrued prior to the Defendants' attempted withdrawal. Such expenses consisted of engineering, legal, and accounting expenses, an existing Farm Home loan, and budgeted expenses for the 1995–1996 fiscal year, for which all members were liable. While there is no question that Defendants were able to calculate the amount of the actual assessments, and could have tendered the money, they were not required to. No levy was actually made on the members until the time of trial, and until such levy was made, the money had not "become[ ] due." Therefore, the award of prejudgment interest to Kidd Island is reversed.

## C. Defendants are not entitled to attorney's fees on appeal.

Defendants argue they should be awarded attorney's fees "in an amount to be determined as provided in Idaho Appellate Rule 41(d) [because] the appeal focus has been upon the application of settled law to the facts. . . ."

Idaho Appellate Rule 41(d) provides only the procedural requirements to request attorney's fees; it does not provide this Court the authority to grant them. Idaho law clearly requires an award of attorney's fees to be based upon authority via a statute or contractual right. *See, e.g., Robbins v. County of Blaine,* 134 Idaho 113, 996 P.2d 813 (2000); *Post v. Murphy,* 125 Idaho 473, 873 P.2d 118 (1994); *Farm Credit Bank of Spokane v. Wissel,* 122 Idaho 565, 836 P.2d 511 (1992). Defendants cite I.C. § 12–121, which allows for an attorney's fees award when an appeal is based upon the application of settled law to the facts. This is simply not the case here. The central issue of this appeal, the interpretation of the phrase "commitments made" found in I.C. § 30–3–41(2), is one of first impression for this Court. A case of first impression does not constitute an area of settled law; therefore, Defendants' claim for attorney's fees is denied.

## IV.

## CONCLUSION

The district judge properly determined the Defendants were not obligated to pay a pro rata share of a USDA loan obtained by Kidd Island to bring its water system into compliance with the DEQ. The district judge, however, improperly awarded Kidd Island prejudgment interest on the Defendants' pro rata share of expenses. We award costs but not attorney's fees to Defendants on appeal.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.