# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43936 & 44190

| | | |
|---|---|---|
| WASHINGTON FEDERAL, successor by merger to South Valley Bank & Trust, | ) ) ) | |
| Plaintiff-Appellant-Cross Respondent, | ) ) | |
| v. | ) ) | Boise, June 2017 Term |
| MICHAEL R. HULSEY, individually; SM COMMERCIAL PROPERTIES, LLC, an Idaho limited liability company; JOHN and JANE DOES I-X, WHITE CORPORATIONS I-X, | ) ) ) ) ) ) ) | 2017 Opinion No. 107<br><br>Filed: October 31, 2017<br><br>Karel A. Lehrman, Clerk |
| Defendants-Respondents-Cross Appellants. | ) ) ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Shoshone County. Hon. Benjamin R. Simpson, District Judge.

The Court affirms the judgment entered on December 23, 2015, in which Washington Federal's claim for deficiency was dismissed. The Court vacates the judgment entered on April 21, 2016 to the extent it denies Washington Federal's claim for attorney's fees and costs.

Davison, Copple, Copple & Copple, LLP, Boise, for appellant. Terry C. Copple argued.

John F. Magnuson, Coeur d'Alene, argued for respondents.

_____

BRODY, Justice.

This case arises from the foreclosure of nine commercial condominium units owned by Michael R. Hulsey and SM Commercial Properties, LLC. Just prior to a sheriff's sale, SM Commercial Properties filed bankruptcy. Eventually the bankruptcy stay was lifted and the sale took place. Washington Federal bought the property with a credit bid and then asserted a deficiency against Hulsey. The district court found that Washington Federal failed to prove both the existence of a deficiency as well as the fair market value of the property. Washington Federal

1

raises the following issues on appeal: (1) whether Hulsey is precluded (collaterally estopped) from litigating the fair market value of the property based on the bankruptcy court proceedings; and (2) whether the district court erred when it determined that Washington Federal failed to prove the existence of the deficiency and the fair market value of the property. Both parties appealed the district court's denial of attorney's fees, but Hulsey dismissed his cross-appeal at the time of oral argument. We affirm the district court's judgment dismissing Washington Federal's claim for a deficiency, but vacate the district court's judgment denying Washington Federal's costs and attorney's fees incurred to enforce the judgment and decree of foreclosure.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Michael Hulsey purchased nine commercial condominium units, which were located on the base floor of the Morning Star Lodge located in the Silver Mountain Resort Complex in Kellogg, Idaho. Several of the units are used by the resort for its operations. Hulsey purchased the units from Jeld-Wen, the developer, for the total purchase price of $2,378,000. He financed $1,350,000 of the purchase price through Washington Federal's predecessor-in-interest bank. The commercial loan was made to Hulsey individually and was secured by a deed of trust on the units and an assignment of rents. After the units were completed, Hulsey attempted to sell the nine units as a single package, but he was unsuccessful. In 2008, the real estate market's downturn made it difficult for Hulsey to maintain tenants in some of the units. Hulsey transferred title to the nine units to his wholly owned limited liability company, SM Commercial Properties. Although he transferred title to the units, Hulsey remained liable on the loan because he was the original borrower. During this time, the original lender merged with Washington Federal.

Under the terms of the promissory note, the entire amount due and owing matured on September 5, 2012. After the loan matured, Washington Federal granted Hulsey time to continue to attempt to sell the units to satisfy the loan. Hulsey continued to make voluntary interest payments, and at the end of 2013, the balance owed under the loan was $1,213,751. In August of 2013, Hulsey received an offer ("2013 Offer") to purchase the nine units, together with an additional commercial condominium not at issue, for a total of $2 million. The offer was subject to the buyer's ability to simultaneously close on his purchase of the Silver Mountain Resort.

On October 29, 2013, Washington Federal told Hulsey to direct all future communications regarding the loan to Washington Federal's counsel. Hulsey proposed to

continue making interest payments, as he had done with Washington Federal's predecessor-in-interest and with Washington Federal, but the bank declined Hulsey's proposal.

In January 2014, Hulsey's attorney sent Washington Federal a written, prelitigation settlement offer. The settlement offer included a short valuation letter from Jim Koon, an experienced commercial broker and property manager in North Idaho. In the offer, Hulsey suggested to Washington Federal that the property might be worth $578,000 depending on certain assumptions. Washington Federal did not accept the settlement offer.

Washington Federal subsequently filed suit against Hulsey and SM Commercial Properties. The parties stipulated to the entry of an order appointing a receiver and to the entry of a Judgment and Decree of Foreclosure in the amount of $1,487,517.62. The parties requested that the district court retain jurisdiction to handle any deficiency that might result from the sale of the property.

On October 29, 2014, SM Properties filed Chapter 11 Bankruptcy. The Sheriff's sale that had been scheduled to take place the next day was cancelled. Shortly thereafter, Hulsey received another unsolicited offer for the property ("2014 Offer") for $1.5 million. Like the 2013 Offer, the 2014 Offer was subject to the buyer simultaneously purchasing the Silver Mountain Resort.

Washington Federal moved the bankruptcy court for relief from the automatic stay to allow the foreclosure to proceed under the district court's order. Hulsey objected to Washington Federal's motion, and the matter was heard by the bankruptcy court. The bankruptcy court granted the motion from the bench. Subsequently, the property was sold by the Shoshone County Sheriff pursuant to the district court's Judgment and Decree of Foreclosure. Washington Federal purchased the property based upon a credit bid of $765,000. Washington Federal sought a deficiency against Hulsey for over $700,000 ($1,487,517.62 - $780,000 (the appraised value advanced by Washington Federal's expert).

The sole remaining issue—whether a deficiency judgment should enter—was tried by the district court. One week before trial, Washington Federal filed a motion in limine challenging some of the exhibits proposed by Hulsey, including a 2005 appraisal of the property. Washington Federal argued the 2005 appraisal was irrelevant and requested that the district court apply the bankruptcy court's ruling on the motion for relief from stay (specifically, a finding that there was no equity in the property) to preclude Hulsey from contesting the fair market value of the property as of the sale date. In its memorandum decision following the trial, the district court

rejected Washington Federal's issue preclusion argument, finding that the bankruptcy court did not determine the fair market value of the property. The district court subsequently found that Washington Federal had failed to meet its burden of proof as to the existence of a deficiency and the fair market value of the property as of the sale date. Both parties then moved for attorney's fees incurred after the entry of the stipulated Judgment and Decree of Foreclosure, which the district court denied. Washington Federal timely appealed to this Court. Hulsey filed a cross-appeal on the denial of the attorney's fees, but dismissed the appeal at the time of oral argument.

## II.
## ISSUES PRESENTED ON APPEAL

1. Whether the district court erred in ruling that the bankruptcy proceedings did not preclude Hulsey from contesting the existence of a deficiency.
2. Whether the district court erred by finding that Washington Federal failed to satisfy its burden of proving the existence of a deficiency and the amount of the deficiency.
3. Whether the district court erred in denying attorney's fees and costs incurred by Washington Federal after entry of the stipulated Judgment and Decree of Foreclosure and before the deficiency trial.
4. Whether the district court erred in striking portions of the affidavit of Roy Cuzner submitted by Washington Federal in support of its request for attorney's fees.
5. Whether either party is entitled to an award of attorney's fees and costs on appeal.

## III.
## STANDARD OF REVIEW

The Court's review is limited "to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law." *Sims v. Daker*, 154 Idaho 975, 977, 303 P.3d 1231, 1233 (2013). "[T]his Court is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented." *Steuerer v. Richards*, 155 Idaho 280, 283, 311 P.3d 292, 295 (2013). "Findings of fact will not be set aside on appeal unless they are clearly erroneous." *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2010). But "[w]here findings of fact are supported by substantial and competent, though conflicting, evidence, they are not clearly erroneous and thus will not be disturbed by this Court." *Id.*

## IV.
## ANALYSIS

4

**A.** **The district court correctly held that Hulsey was not precluded from contesting the existence or amount of the alleged deficiency because those issues were not previously litigated by the bankruptcy court.**

Washington Federal contends that the district court erred when it refused to apply the doctrine of issue preclusion (collateral estoppel) to prevent Hulsey from contesting the deficiency. The bank argues that Section 362 of the United States Bankruptcy Code required the bankruptcy court to determine the fair market value of the property in order to adjudicate Washington Federal's motion to lift the automatic stay. Washington Federal argues that the only plausible market value must have been $780,000, because the only evidence the bankruptcy court considered was Washington Federal's appraisal as it declined to consider the 2013 and 2014 failed offers. Washington Federal's arguments are not well taken.

Issue preclusion protects litigants from having to re-litigate an identical issue with the same party or a party in privy with the original party. *Ticor Title v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007). This Court explained in *Ticor Title* that there are five factors that are required to preclude a party from re-litigating an issue:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the present action; (2) the issue decided in the prior litigation was **identical** to the issue presented in the present action; (3) the issue sought to be precluded was **actually decided** in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Kootenai Elec. Coop., Inc. v. Lamar Corp.*, 148 Idaho 116, 120, 219 P.3d 440, 444 (2009) (emphasis added). Washington Federal cannot satisfy the second and third factors.

A Chapter 11 bankruptcy petition filed under Sections 301, 302, or 303 results in the imposition of an automatic stay precluding a number of actions, including any act to enforce a lien against property of the debtor. 11 U.S.C. § 362. Section 362 provides a mechanism for lifting the automatic stay so that a debtor can proceed with collection efforts under certain circumstances:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> > (2) with respect to a stay of an act against property under subsection (a) of this section,

5

(A) if the debtor *does not have an equity* in such property; and
(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1), (2) (emphasis added).

Washington Federal filed a motion for relief from stay with the bankruptcy court so that it could proceed with the sale of the property. The bank argued that, based upon the fair market value of the property as presented in its expert appraiser's report, there was no equity and it should be allowed to proceed with the sale. Hulsey objected to the motion for relief from stay, arguing that it had equity in the property based upon the 2013 Offer of $2 million and the 2014 Offer of $1.5 million.

At the hearing, the bankruptcy court considered Washington Federal's appraisal: "The creditor . . . specifically presents that it has a current MAI appraisal establishing a value of the real property at $780,000." The bankruptcy court refused to consider Hulsey's evidence of the two failed offers:

> The debtor did not indicate under the local rule that Mr. Cox or others working with the offeror would be testifying witnesses at a final hearing, and specifically advised that it planned only on calling Hulsey as a witness.
>
> The debtors' counsel also conceded that unless the Court accepted the suggestion that the $1.5 million dollar contingent offer established value that it could not otherwise contest the valuation figure offered by Washington Federal's appraiser.
>
> On the representations required under the local rule, and given the requirements of Section 362(d), (e), and (g), Washington Federal is found to have met its burden of showing that there is no equity.

The bankruptcy court stated that, "[E]ven if the Cox group proposal would be considered, the offer now and the Washington Federal debt are both approximately $1.5 million. . . . So in that regard, I find that the value is likely to be less than the amount of the debt and ergo there is no equity." The bankruptcy court subsequently granted Washington Federal's motion for relief from stay.

It is important to recognize that the bankruptcy court made one finding–the value of the property is likely to be less than the amount of the debt. The bankruptcy court did not make a finding as to the actual fair market value, and it is too far of a stretch to claim that it must have implicitly adopted Washington Federal's appraised value of $780,000. The bankruptcy court did not have to determine the actual fair market value of the property to determine whether relief from the stay should be granted. It only had to consider whether the actual value was likely to be less than the amount of the debt. In other words, there is no way to determine based on the

6

bankruptcy court's decision that there would be a deficiency when the property was sold or how much that deficiency would be. The bankruptcy court did not adjudicate or actually decide the same issues that were presented to the district court. As such, the district court correctly declined to apply the doctrine of issue preclusion to estop Hulsey from contesting the deficiency.

On a final note, this Court would like to address the procedural manner in which the issue preclusion defense was raised. Issue preclusion is a form of res judicata and is an affirmative defense which must be pled. *See* Idaho Rules of Civil Procedure 8(c)(1)(O). Washington Federal raised this defense in a motion in limine filed eight days before trial. A motion in limine is not a proper substitute for a motion for summary judgment. There are serious time constraints on filing motions for summary judgment under Rule 56(b), and litigants cannot circumvent those time requirements through creative captioning. This issue was not raised on appeal, but we want to make attorneys aware of our view of the disguised motion for summary judgment so they can manage their cases accordingly.

**B.**     **The district court correctly held that Washington Federal failed to satisfy its burden of proving the existence of a deficiency and the amount of the deficiency.**

The district court held that Washington Federal failed to carry its burden of proving the existence of a deficiency and the amount of that deficiency. Washington Federal challenges that holding, arguing the testimony of the bank's appraiser Vicki Mundlin was the only testimony of an Idaho licensed appraiser and should have been accepted by the district court. Washington Federal argues that Hulsey's "sole evidence" about the two failed, contingent offers is inadequate to establish the market value of the property, and that Hulsey failed to produce an actual appraisal. Washington Federal also objects to the use of several demonstrative exhibits, which were used to illustrate hypothetical scenarios. The exhibits were not admitted into evidence or disclosed prior to trial, but were part of Hulsey's cross examination of Mundlin.

"In foreclosure actions, a mortgagee may obtain a deficiency judgment if a foreclosure sale does not satisfy a mortgagor's debt." *Nw. Farm Credit Servs., FLCA v. Lake Cascade Airpark, LLC*, 156 Idaho 758, 760, 331 P.3d 500, 503 (2014) (citing I.C. § 6-108). The deficiency is limited by Idaho Code section 6-108 to the difference between the fair market value of the property and the amount of the unpaid debt. *Id*. As stated earlier, "[t]he Court will not disturb the district court's finding of fact unless the finding is clearly erroneous." *Id*. (citing *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 767, 291 P.3d 442, 450 (2012)). A finding is clearly erroneous if it is not supported by substantial and competent evidence. *Id*.

"Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 583, 38 P.3d 617, 621 (2001).

The district court analyzed all of the evidence presented at trial, including the testimony of Washington Federal's appraiser, the valuation discussion from Jim Koon that was included in the Hulsey settlement offer, and the testimony of Hulsey. The district court carefully analyzed Mundlin's opinions, including the assumptions she made and the information she considered and did not consider in forming her opinion. The district court considered Mundlin's imputed vacancy rates, actual and market lease rates, expense reimbursements for management fees and tax burdens, and capitalization rate. To say that Hulsey undermined Mundlin's opinions through cross examination is putting it mildly. The district court went through Mundlin's testimony in detail and the cross examination that was done and hypothetical scenarios that were used to discredit her opinions. At the end of the day, the district court concluded:

> The court is very well aware Ms. Mundlin disagrees with Mr. Magnuson's changes to her assumptions in the appraisal and in his hypothetical analyses. The court is very well aware of the reasons Ms. Mundlin testified to as support for her opinions. The court has thoroughly reviewed and considered the entire trial record. Because of the credible distinctions and inconsistencies raised by Mr. Magnuson in his cross-examination of Ms. Mundlin; because of the conflicting but credible opinion of Mr. Hulsey, a licensed real estate broker and experienced commercial real estate investor and manager, supported by the assemblage value theory; because of the omission of the contingent offers by Washington Federal; and because of the profound change in appraised value illustrated by Mr. Magnuson's hypothetical changes to Ms. Mundlin's subjective assumptions the court does not find Ms. Mundlin's determination of fair market value of $780,000 to be credible.
>
> * * *
>
> The court finds the Plaintiff has failed to meet its burden of proof as to the fair market value of the subject real property on March 5, 2015. Further, the court finds Plaintiff has failed to prove the existence of a deficiency between the fair market value of the property on March 5, 2015 and its credit bid of $765,000.

The district court's decision was supported by substantial and competent evidence. The district court considered evidence that "a reasonable mind might accept to support a conclusion." *Jarvis*, 136 Idaho at 583, 38 P.3d at 621. The district court carefully considered in-depth all of the evidence presented before it and made reasonable conclusions. Washington Federal makes much of the fact that Hulsey did not put on any evidence from a certified appraiser. Washington

Federal misses the point that it had the burden of proof—not Hulsey. After cross examining Mundlin, Hulsey made the decision not to call his own expert. He obviously felt that he had discredited Mundlin's opinions enough through cross examination that he did not need to put on his own expert testimony. That was a calculated decision that worked in his favor. The district court's decision that Washington Federal failed to prove the existence of a deficiency and the amount of a deficiency is supported by substantial and competent evidence. As such, we affirm the decision of the district court.

**C.     The district court erred when it denied Washington Federal's motion for postjudgment attorney's fees and costs.**

Washington Federal claims the district court erred when it denied the bank's motion for attorney's fees and costs. Hulsey filed a competing motion under Idaho Code section 12-120(3), claiming that he was the prevailing party. The district court denied both parties' requests, finding that neither one of them prevailed based on an overall view of the case. Both parties appealed the district court's decision, but Hulsey dismissed his cross appeal at the time of oral argument. Washington Federal continues with its assertion of error, arguing that its motion should have been granted because: (1) section 12-120(5) mandates the award of attorney's fees and costs incurred to enforce a judgment; (2) the promissory note and deed of trust authorize the award of attorney's fees and costs regardless of whether the bank was the prevailing party; and (3) the district court should have determined that the bank was the prevailing party.

Generally speaking, the district court's decision to award attorney's fees is a discretionary call, subject to the abuse of discretion standard of review. *Bailey v. Sanford*, 139 Idaho 744, 753, 86 P.3d 458, 467 (2004). To determine whether the district court abused its discretion, this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Nampa Charter School, Inc. v. DeLaPaz*, 140 Idaho 23, 29, 89 P.3d 863, 869 (2004). We hold that the district court abused its discretion because it did not act consistently with applicable legal standards.

We first address Washington Federal's assertion that it is entitled to attorney's fees and costs pursuant to Idaho Code section 12-120(5). The problem with this argument is that Washington Federal did not assert this statute as a basis for its motion for attorney's fees and costs at the time it made its motion. The only bases cited by the bank in its motion were "Rule 54

9

of the Idaho Rules of Civil Procedure, the parties' Promissory Note, Deed of Trust and related loan documentation." We have repeatedly held that "[a] party claiming attorneys fees must assert the specific statute, rule, or case authority for its claim." *MDS Invs., L.L.C. v. State,* 138 Idaho 456, 465, 65 P.3d 197, 206 (2003). *See also Bream v. Benscoter,* 139 Idaho 364, 79 P.3d 723 (2003). Because Washington Federal did not make the 12-120(5) argument when it presented its motion to the district court, it cannot now claim that the district erred by failing to consider it.

Next we address the more difficult issue of whether the bank was entitled to attorney's fees and costs even though the district court determined it was not the prevailing party. Washington Federal contends the district court erred because its decision was inconsistent with our decisions in *Post v. Murphy*, 125 Idaho 473, 476-77, 873 P.2d 118, 121-22 (1994), and *Farm Credit Bank v. Wissel*, 122 Idaho 565, 569, 836 P.2d 511, 517 (1992. In those cases, we held that the terms of a valid contract between the parties provided for the award of attorney's fees and costs even though the trial court determined that the requesting party had not prevailed. We agree that the district court did not consider these decisions when denying Washington Federal's motion and that it constituted an abuse of discretion because the decision to deny fees was not made in accordance with applicable law.

While the dissent contends we should overrule *Post* and *Farm Credit Bank,* particularly based on the role that Idaho Rule of Civil Procedure 54 plays as a conduit to the award of attorney's fees in contract cases, Hulsey did not address Washington Federal's argument in its briefing on appeal and certainly did not advocate for the reversal of these long-standing precedents. Given the importance of the freedom to contract and potential reliance issues, we are not persuaded to re-consider *Post* and *Farm Credit Bank* in a case where the parties have not fully briefed the issue. *See, e.g.*, *Payne v. Tennessee*, 501 U.S. 808, 827–28 (1991) ("Considerations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved"). Similarly, we will not consider the waiver argument the dissent raises because Hulsey did not make this argument on appeal.

Because we hold the district court erred in denying Washington Federal's request for attorney's fees and costs based on *Post* and *Farm Credit Bank*, we need not address Washington Federal's argument that it was the prevailing party. We vacate the judgment dated April 21, 2016, to the extent it denied Washington Federal's request for attorney's fees and costs and remand this matter for further proceedings consistent with this opinion.

10

**D.** **The issue of whether the district court properly struck portions of the affidavit of Roy Cuzner submitted in support of Washington Federal's request for attorney's fees is moot.**

Washington Federal submitted the affidavit of Roy Cuzner, a vice president of special assets, in opposition to Hulsey's motion for attorney's fees and to support its alternative argument that it was the prevailing party in the litigation. The affidavit outlined a settlement offer made by Washington Federal and included as an exhibit a copy of the appraisal done by Hulsey's own expert that essentially established a sizeable deficiency (the expert was not called at trial and his appraisal was not admitted as an exhibit). Hulsey filed a motion to strike portions of the affidavit and the exhibit. Given our decision today that Washington Federal is entitled to costs and fees without regard to whether it was the prevailing party, this issue is moot and will not be addressed.

**E.** **Washington Federal is entitled to attorney's fees for responding to Hulsey's cross-appeal.**

Hulsey requests an award of attorney's fees on appeal pursuant to Idaho Code section 12-120(3) on the ground that this is an action to recover in a commercial transaction. Because Hulsey only prevailed in part on appeal and did not prevail in his cross-appeal, he is not entitled to an award of attorney's fees on appeal. *Telford v. Smith County, Texas*, 155 Idaho 497, 504, 314 P.3d 179, 186 (2013). Washington Federal did not request attorney's fees on its appeal, but did request an award of attorney's fees in responding to Hulsey's cross-appeal. Consistent with our analysis of Washington Federal's request for attorney's fees set forth above, Hulsey is obligated to pay reasonable attorney's fees in responding to the cross-appeal.

## V.
## CONCLUSION

We affirm the judgment entered on December 23, 2015, in which Washington Federal's claim for deficiency was dismissed and vacate the judgment entered on April 21, 2016, to the extent it denies Washington Federal's claim for attorney's fees and costs. We award Washington Federal attorney's fees and costs in defending against Hulsey's cross-appeal. The case is remanded for further proceedings consistent with this decision.

Justices EISMANN and HORTON CONCUR.


BURDICK, C.J., concurring in part and dissenting in part.

11

I respectfully dissent from Part IV(C) of the majority's opinion. I cannot agree with the majority that Washington Federal is entitled to attorney fees for the relevant proceedings below even though Washington Federal was the non-prevailing party.

Washington Federal seeks attorney fees incurred from the date of the entry of the stipulated judgment and decree of foreclosure "on August 18, 2014, through the successful completion of Washington Federal's Motion To Lift Automatic Stay . . . but excluding any costs and attorneys' fees incurred with regard to the . . . fair market value of the real estate . . . ." The plain terms of the stipulated judgment foreclose Washington Federal's claim for attorney fees. In pertinent part, the stipulated judgment states as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That [Washington Federal] have and recover judgment against [Hulsey] for the principal sum of $1,213,751.44, plus accrued interest to August 18, 2014, in the amount of $201,820.50, plus the expenses of foreclosure of $5,761.73, attorneys' fees and costs of $66,183.95, for a total judgment of $1,487,517.62 as of August 18, 2014, together with interest hereafter at the statutory rate of interest as provided by law until this judgment is paid in full; and

. . . .

9. That the Court specifically retains jurisdiction to determine the *sole remaining issue* after sheriff sale of the fair market value of the foregoing property as of the date of the foreclosure sale for the purpose of determining whether [Washington Federal] is entitled to entry of a deficiency judgment against [Hulsey]. The current trial date for this action commencing on December 10, 2014, shall be the date for the trial of such fair market value issue, unless rescheduled by the Court or stipulation of the parties.

(emphasis added).

Thus, the stipulated judgment parceled out the exact damages to which Washington Federal was entitled, including $66,183.95 in attorney fees and costs for matters predating August 18, 2014.[1] More importantly, and dispositive here, the stipulated judgment further reserved to Washington Federal the right to litigate the fair market value in a deficiency judgment proceeding—the "sole remaining issue." This key language refutes Washington Federal's claim for attorney fees. Washington Federal did not, for example, reserve the right to seek both a deficiency judgment *and* attorney fees in excess of the $66,183.95 it already recovered as the "sole *two* remaining issues." To the contrary, the stipulated judgment clearly

---

[1] The district court observed that "[i]t is not clear from the stipulation what the legal basis for the award of expenses of foreclosure or attorneys' fees and costs included in the judgment was." However, since "the amount was agreed to[,]" the district court declined to disturb it.

shows that Washington Federal's claim for attorney fees was not preserved as the "sole remaining issue." As Hulsey argued below to the district court, "The attorney fees were not a preserved claim under the stipulated Judgment and Decree of Foreclosure." Washington Federal, therefore, waived the right to seek attorney fees beyond the $66,183.95 it already recovered under the stipulated judgment. *See, e.g.*, *Crouch v. Bischoff*, 78 Idaho 364, 368, 304 P.2d 646, 649 (1956) ("A waiver is the intentional relinquishment of a known right. It is a voluntary act and implies election by a party to dispense with something of value or to forego some right or advantage which he might at his option have demanded and insisted upon."). Similarly, Washington Federal is estopped from asserting its claim for attorney fees because that claim is inconsistent with the stipulated judgment. *See, e.g.*, *Smith v. U.S.R.V. Props., LC*, 141 Idaho 795, 800, 118 P.3d 127, 132 (2005) ("Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." (quoting *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997))); 30A C.J.S. *Estoppel and Waiver* § 186 (August 2017) ("Under the rule, principle, or doctrine of judicial estoppel, during the course of litigation a party is not permitted to occupy or assume inconsistent or contradictory positions, and the parties to the litigation are necessarily bound to the positions that they assume therein."). The majority is remiss to overlook how these governing principles apply to the clear language of the stipulated judgment, as this Court has long expressed a preference for holding parties to their amicable resolutions of litigation. *E.g.*, *Quick v. Crane*, 111 Idaho 759, 780, 727 P.2d 1187, 1208 (1986) ("This Court has always held to the strong public policy favoring amicable settlement of litigation."); *accord Hammer v. City of Sun Valley*, No. 43079, 2016 WL 7384133, at *4 (Idaho Dec. 21, 2016) (quoting *Lomas & Nettleton Co. v. Tiger Enters., Inc.*, 99 Idaho 539, 542, 585 P.2d 949, 952 (1978)).

Notwithstanding that the plain terms of the stipulated judgment are dispositive, the key contract provisions the majority asserts entitles Washington Federal to attorney fees provide as follows:

- *Deed of Trust.* "If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal."

- *Promissory Note.* "Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes,

13

subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings . . ., and appeals. If not prohibited by applicable law, Borrower will also pay any court costs, in addition to all other sums provided by law."

Like the majority, I observe that these contract provisions purport to entitle Washington Federal, the lender, to attorney fees absent any requirement that Washington Federal be the prevailing party. Indeed, these provisions appear to sweep broadly by permitting Washington Federal to recover attorney fees even if, for example, it were to file a frivolous claim in bad faith. Accordingly, I question whether interpreting these provisions as broadly as Washington Federal argues would render them void as against public policy. I recognize freedom of contract is vitally important, but it must yield at times to the greater good. *Cf. Strong v. W. Union Tel. Co.*, 18 Idaho 389, 401, 109 P. 910, 914 (1910) ("Public policy is that principle of law under which freedom of contract or private dealing is restricted by law for the good of the community-the public good."). Undoubtedly, contract provisions making a prevailing party liable for the non-prevailing party's attorney fees epitomizes inequitable bargaining while chilling both contract negotiation and litigation. As such, these provisions are notoriously suspect. *See, e.g.*, *Hackett v. Streeter*, 109 Idaho 261, 265, 706 P.2d 1372, 1376 (Ct. App. 1985) (noting that "argument which, if followed, would permit a non-prevailing party to have all of its fees and costs paid by a prevailing party" would not serve the "interest of justice"); *Jadwin v. Kasal*, 318 N.W.2d 844, 848 (Minn. 1982) ("Requiring the mortgagor to underwrite all of the bank's legal actions taken with respect to the mortgagor's property would encourage ill-considered litigation and farfetched claims by the bank and discourage the mortgagor from challenging the liens claimed by subcontractors and materialmen.").

Construing the contract provisions in light of these potentially fatal concerns, I question whether their plain terms actually entitle Washington Federal to attorney fees in this case. It is axiomatic that a contract purporting to authorize what the law precludes is void as an illegal contract. *E.g.*, *AED, Inc. v. KDC Invs.*, LLC, 155 Idaho 159, 167, 307 P.3d 176, 184 (2013). And I do not find Washington Federal's construction of the above contract provisions to be authorized by the applicable law, to wit: the Idaho Rules of Civil Procedure. Rule 54(e)(1) grants discretion to award attorney fees to the "prevailing party or parties . . . when provided for by any statute or *contract*." (emphasis added). Similarly, under Rule 54(e)(5), attorney fees, "when allowable by statute or *contract*, are costs in an action and processed in the same manner as other costs . . . ."

14

(emphasis added). Costs, in turn, are exclusively for the prevailing party. I.R.C.P. 54(d)(1)(A). Merely that Washington Federal claims attorney fees under the contract provisions does not eviscerate the clear requirements of the Idaho Rules of Civil Procedure, namely that it must be the prevailing party. *See Zenner v. Holcomb*, 147 Idaho 444, 449, 210 P.3d 552, 557 (2009) ("Furthermore, I.R.C.P. 54(e)(1) governs the trial court's award of attorney fees in a civil action when fees are provided by statute or contract. Rule 54(e)(1) states that the trial court may award reasonable attorney fees to the prevailing party or parties as defined by Rule 54(d)(1)(B)."); *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 570–72, 836 P.2d 511, 515–18 (1992) (Johnson, J., concurring in part and dissenting in part).

At any rate, the majority cites to two decisions of this Court to conclude Washington Federal is entitled to attorney fees. In *Farm Credit*, this Court reversed and remanded a denial of attorney fees to Farm Credit Bank (FCB). 122 Idaho at 568–69, 836 P.2d at 514–15. The district court concluded FCB was not entitled to attorney fees because it was not the prevailing party in an action seeking possession of a leasehold. *Id.* at 567, 836 P.2d at 513. The district court explained that "[i]t is therefore my conclusion that each of the parties hereto prevailed in part and did not prevail in part." *Id.* FCB thereafter appealed, contending it was entitled to attorney fees under a contract between the parties, which provided that "[i]n the event that the Lessor does find it necessary to bring suit or action under the terms of this lease, then the Lessee hereby agrees to pay the Lessor's reasonable attorney fees and costs of suit incurred in said suit or action." *Id.* at 568, 836 P.2d at 514. In light of that contract provision, this Court remanded and emphasized the following:

> Under the lease provision, the only requirement for the award of attorney fees and costs is that the "lessor does find it necessary to bring suit or action under the terms of this lease," in which event, "the lessee hereby agrees to pay the lessor's reasonable attorney fees and costs of suit incurred in such suit or action." Whether the lessor found it necessary to bring suit or action is a subjective decision and standard on the part of the lessor, which must not be "prompted by caprice or bad faith."

*Id.*

Two years after *Farm Credit*, this Court decided *Post v. Murphy*, 125 Idaho 473, 476, 873 P.2d 118, 121 (1994). In *Post*, this Court affirmed an award of attorney fees to a set of defendants even though they did not prevail in the underlying litigation. *Id.* The contract entitling the defendants to fees stated "[i]n the event that the Grantors shall employ legal counsel in

15

connection with or to enforce these covenants and restrictions, then the persons with respect to which such employment occurs shall pay all costs incurred, including reasonable attorneys' fees." *Id.* As this Court explained, "*Farm Credit* controls the costs and fees recovery of appellants in this case. The only requirement in [the contract] is that a [defendant] employ legal counsel in connection with the [contract]." *Id.* at 476–77, 873 P.2d at 121–22. This Court then affirmed the attorney fee award entered under the contract below, stating it was "beyond question" that defendants employed legal counsel "in connection with" the contract by hiring legal counsel to defend, albeit unsuccessfully, from plaintiffs' suit arising under the contract. *Id.*

 *Farm Credit* and *Post* do not control. To the extent the majority reads these two cases to authorize an award of attorney fees to non-prevailing parties absent considerations of policy, equity, and the Idaho Rules of Civil Procedure, I believe these cases should be overruled as manifestly wrong. While the majority notes that no argument was made for these cases to be overruled, it is the responsibility of this Court to evaluate precedent. As we have explained previously:

> This Court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined in the light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function.
>
> Stare decisis is not a confining phenomenon but rather a principle of law. And when the application of this principle will not result in justice, it is evident that the doctrine is not properly applicable.

*State v. Humphreys*, 134 Idaho 657, 660–61, 8 P.3d 652, 655–56 (2000) (quoting *Smith v. State*, 93 Idaho 795, 801, 473 P.2d 937, 943 (1970), *superseded by statute on other grounds as stated in Gavica v. Hanson*, 101 Idaho 58, 65, 608 P.2d 861, 868 (1980)).

 Further, the majority overlooks that we "may affirm decisions of a district court based on different theories then applied by the district court." *State v. Mann*, 162 Idaho 36, 42, 394 P.3d 79, 85 (2017). Put another way, "Where the lower court reaches the correct result, albeit by reliance on an erroneous theory, this Court *will* affirm the order on the correct theory." *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010) (emphasis added). But even if these cases are not overruled, I find them distinguishable and therefore unpersuasive. Unlike *Farm Credit*, the contract provisions have no qualifier ensuring Washington Federal instituted only necessary litigation. The contract provisions' attorney fee provisions thus raise concerns not presented in

16

*Farm Credit*. And in *Post*, this Court gave deference to the district court's factual findings and concluded the literal requirements of the contract provision were met. But here, the district court made no findings to which this Court gives deference. As such, *Farm Credit* and *Post* do not support Washington Federal's argument.

For the reasons above, I cannot join Part IV(C) of the majority's opinion.

Justice JONES CONCURS.