93 P.3d 685

**J. Scott SHAWVER, a/k/a Scott Shawver and Mary L. Shawver, a/k/a Mary Shawver, Plaintiffs–Respondents–Cross Appellants,**

v.

**HUCKLEBERRY ESTATES, L.L.C., an Idaho limited partnership, Defendant–Appellant–Cross Respondent.**

**No. 28855.**

Supreme Court of Idaho, Boise, December 2003 Term.

April 29, 2004.

Rehearing Denied June 22, 2004.

Bohner Law Office, Boise, for appellants. A.J. Bohner argued.

Westburg, McCabe & Collins, Boise, for respondent. William D. Collins argued.

SCHROEDER, Justice.

This case involves a real estate purchase and sale agreement between Scott and Mary Shawver ("Shawvers") and Huckleberry Estates, L.L.C. ("Huckleberry"). The Shawvers allege Huckleberry breached the sale agreement by making an invalid amendment to the restrictive covenants applicable to the property, which rendered the Shawvers' proposed house designs nonconforming. Both parties moved for summary judgment and the district court found Huckleberry in breach. Following a court trial on issues relating to the interpretation of the original covenants and appropriate damages, the district court awarded specific performance of the sale agreement in favor of the Shawvers, subject only to the original covenants. Both parties appealed.

## I.

### FACTUAL BACKGROUND

On November 9, 1999, Huckleberry and the Shawvers executed an agreement to reserve for the Shawvers the purchase of Lot 11, Block 2, of the Huckleberry Estates subdivision ("the Subdivision"). The sale was to close within 30 days of the recording of the final plat of Phase 1 of the Subdivision. Huckleberry's agent provided the Shawvers with a copy of the preliminary plat and restrictive covenants as then drafted ("Draft CC & Rs"). By signing the reservation agreement, the Shawvers acknowledged that they had received a copy of the restrictive covenants that applied to the lot, had familiarized themselves with the covenants and agreed to abide by them. The Draft CC & Rs provided in relevant part:

c. MINIMUM BUILDING SIZE: All residential buildings erected upon said property shall have a finished floor area of not less then 2,200 square feet of ground area, exclusive of garages, carports, breezeways, storage rooms, porches or similar structures; or 2,600 square feet of finished area in the case of a two story house. All dwellings

must have at least a three-car garage, attached or detached. Lot 3 Block 4 shall be excepted from this condition and shall have a minimum residential finished floor area of 1,600 square feet on the ground floor level and a two-car garage.

\*\*\*\*\*\*

r. DESIGN REVIEW: Grantor or other persons designated by Grantor shall review all structures and site plans prior to commencement of construction.

After signing the reservation agreement, the Shawvers designed a house for the Huckleberry property which met the square-footage requirements of the Draft CC & Rs. The plan was for a two-story structure with 1370 square feet on the first floor and 1770 square feet on the second floor. The Shawvers engaged a contractor to build the house.

On July 21, 2000, Huckleberry recorded the final plat and original CC & Rs for the Subdivision. The original recorded CC & Rs contained an amendment provision, which allowed amendment of any provision of the CC & Rs upon written approval of "at least seventy-five percent of the lot owners." The Shawvers received a copy of the original recorded CC & Rs on August 1, 2000. Aside from the addition of the amendment provision, the recorded CC & Rs did not differ from the Draft CC & Rs in any respect relevant to this case.

On July 28, 2000, a real estate purchase and sale agreement ("Sale Agreement") was initialed by Huckleberry[1] and delivered to the Shawvers by Huckleberry's real estate agent. The Shawvers signed the Sale Agreement and delivered it to Huckleberry's real estate agent on August 17, 2000. Pursuant to the agreement, the Shawvers were responsible for obtaining and reviewing a copy of the applicable CC & Rs. The Shawvers checked the corresponding "yes" box adjacent to this provision, indicating that they had in fact reviewed the applicable CC & Rs.

The Shawvers submitted site, floor and elevation plans for their home to Huckleberry on August 8, 2000. On August 11, 2000, Huckleberry returned those plans to the Shawvers and told the Shawvers that the plans had not been approved. Huckleberry subsequently recorded amendments to the original recorded CC & Rs ("First Amended CC & Rs") on August 28, 2000, which included an increase in the minimum square footage requirement for all homes built in the Subdivision. A copy of the First Amended CC & Rs was provided to the Shawvers on August 30, 2000. As amended, the CC & Rs prevented the Shawvers from constructing their home according to the plans they had previously designed and submitted to Huckleberry. The relevant amendments were as follows:

Article I, Paragraph c. is hereby amended to read as follows:

c. MINIMUM RESIDENTIAL BUILDING FLOOR AREA: Floor area shall be exclusive of eaves, steps, porches, entrances patios and garages. The floor area of a one-story house shall have not less than two thousand two hundred (2,200) square feet on the ground floor. Two story houses shall have not less than a total of two thousand six hundred (2,600) square feet and shall have the following minimums on each floor: one thousand six hundred (1,600) square feet on the ground floor and not less than 800 hundred (800) square feet on the second floor. All dwellings must have at least a three-car garage, attached or detached, which must be identical in architecture to the residential dwelling if detached. Lot 3 Block 4 shall be excepted from this condition and may have a total minimum floor area of one thousand (1,600) square feet and a two-car garage. The Architectural Committee shall have the discretion to reduce the minimum floor areas if the proposed design warrants such an adjustment. Provided, however, that the minimum ground floor area of any dwelling shall

---

1. Neither party disputes the fact that Huckleberry's initialing of the Sale Agreement constitut-

ed a valid execution of the Sale Agreement by Huckleberry.

not be reduced below one thousand five hundred (1,500) square feet.

✲✲✲✲✲✲

Article I, Paragraph w. is hereby amended to read as follows:

w.   DESIGN REVIEW: Grantor or other persons designated by Grantor, shall act as the Architectural Committee. The Architectural Committee shall consider and act upon any and all proposals or plans and specifications submitted for its approval pursuant to this Declaration, including the inspection of construction in conformance with plans approved by the Architectural Committee. The Architectural Committed shall have the power to determine, by rule or other written designation consistent with this Declaration, which types of improvements shall be submitted for Architectural Committee review and approval. The Architectural Committee shall approve proposals or plans and specifications submitted for its approval only if it deems that the construction, alternation, or additions contemplated thereby in the locations indicated are in conformity with this Declaration, and that the appearance of any structure affected thereby will be in harmony with the surrounding structures on other properties within the Subdivision.

Article I, Paragraph z. is hereby amended to read as follows:

z.   AMENDMENTS: The Grantor reserves the right to amend this Declaration until all lots are sold in the subdivision. No amendments shall be made to this Declaration by any of the owners until ten (10) years after the date of the sale of the last lot in the subdivision and then such amendment may be only made by approval of seventy-five percent of the then lot owners.

On August 31, 2000, the Shawvers tendered to the closing agent, First American Title, the balance of the purchase price, but only if First American could assure them they were purchasing under the original recorded CC & Rs and not the First Amended CC & Rs. When First American refused to close under these conditions the Shawvers filed suit against Huckleberry.

## II.

### PROCEDURAL BACKGROUND

On September 1, 2000, the Shawvers filed a complaint against Huckleberry seeking specific performance of the Sale Agreement. The Shawvers amended their complaint on March 7, 2001, to add damages as an alternative basis for relief and to seek a declaration that the August 28, 2000 amendments to the CC & Rs were void. Huckleberry answered the Shawvers' amended complaint and counterclaimed.

On June 1, 2002, the parties submitted cross motions for summary judgment. The Shawvers claimed that the First Amended CC & Rs were invalid because Huckleberry alone did not constitute seventy-five percent of the lot owners, the percentage required for the adoption of a valid amendment under the original recorded CC & Rs. They also asserted that Huckleberry's invalid amendment to the original CC & Rs constituted a breach of the covenant of good faith and fair dealing and that Huckleberry was prevented from amending the original CC & Rs by the doctrine of quasi estoppel. Huckleberry claimed that summary judgment was inappropriate because a contested issue of material fact existed regarding representations made to the Shawvers by Huckleberry's agent concerning the applicability of the Draft CC & Rs. Alternatively, Huckleberry claimed that it was entitled to summary judgment because the Shawvers were seeking to reform the parties' agreements, which could not be accomplished through application of specific performance or the implied covenant of good faith and fair dealing.

On July 23, 2001, Huckleberry recorded a second amendment to the original recorded CC & Rs ("Second Amended CC & Rs"). The Second Amended CC & Rs included essentially the same provisions as the First Amended CC & Rs with the exception of the provision for amendments which was

changed to remove the grantor's reservation. Unlike the First Amended CC & Rs, the Second Amended CC & Rs were approved by over seventy-five percent of the existing lot owners in compliance with the amendment provision contained in the original recorded CC & Rs. Neither party has challenged the validity of the Second Amended CC & Rs.

On October 3, 2001, the district court issued its memorandum decision, finding that any contested issue regarding the applicability of the Draft CC & Rs was immaterial because there was no significant difference between the Draft CC & Rs and the original recorded CC & Rs. The district court also found Huckleberry in breach of the Sale Agreement.

The case proceeded to trial on issues relating to the interpretation of the design review provision of the original recorded CC & Rs, the appropriate remedy for the breach and Huckleberry's counterclaim concerning a lis pendens filed by the Shawvers in connection with the lawsuit. The district court found that the only reasonable interpretation of the design review provision was that it allowed the grantor to enforce conformity with the specific provisions of the original recorded CC & Rs and that the Shawver's proposed house designs were compliant. The district court concluded that the Shawvers are entitled to specific performance of the Sale Agreement, subject only to the original recorded CC & Rs. The district court determined that, "[t]he subsequent amendments have no application to [the Sale Agreement]." Huckleberry's counterclaim was denied. Subsequently, the district court entered its judgment and an order staying the judgment. The Shawvers were awarded attorney fees and costs.

Both parties appealed. Huckleberry claims that the district court erred in awarding specific performance of the Sale Agreement subject only to the original recorded CC & Rs. Huckleberry also challenges the award of attorney fees and costs in favor of the Shawvers. The Shawvers contend that the district court erred by not offsetting the award of attorney fees and costs against the amount they owe Huckleberry in order to

close on the purchase of the lot. Both parties seek attorney fees on appeal.

## III.

### THE DISTRICT COURT ERRED IN HOLDING THAT HUCKLEBERRY BREACHED THE AGREEMENT BY AMENDING THE CC & RS AND ERRED IN GRANTING THE SHAWVERS SPECIFIC PERFORMANCE

Huckleberry argues that the district court erred in ruling, as a matter of law, that it breached the Sale Agreement by attempting to amend the CC & Rs and that the Shawvers were entitled to specific performance of the Sale Agreement under the original recorded CC & Rs.

### A. Standard of Review

On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district judge originally ruling on the motion. *Wensman v. Farmers Ins. Co. of Idaho,* 134 Idaho 148, 151, 997 P.2d 609, 612 (2000) (citing *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997)). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact. *Kromrei v. AID Ins. Co.,* 110 Idaho 549, 551, 716 P.2d 1321 (1986) (citing *Casey v. Highlands Ins. Co.,* 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979)). The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits. *Stafford v. Klosterman,* 134 Idaho 205, 207, 998 P.2d 1118, 1119 (2000) (citing *Bear Island Water Ass'n, Inc., v. Brown,* 125 Idaho 717, 721, 874 P.2d 528, 532 (1994)).

Neither party in this case made a demand for a jury trial. When an action will be tried before the court without a jury, the

trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. *Id.* (citing *Brown v. Perkins,* 129 Idaho 189, 191, 923 P.2d 434, 436 (1996); *Loomis v. Hailey,* 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991)). The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences. *Id.* (citing *Walker v. Hollinger,* 132 Idaho 172, 176, 968 P.2d 661, 665 (1998); *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 518–19, 650 P.2d 657, 660–61 (1982)).

### B. The district court erred by finding Huckleberry in breach of the Sale Agreement.

█ The district court concluded that Huckleberry breached the Sale Agreement when it made an invalid amendment to the original recorded CC & Rs. Huckleberry claims that this decision constituted error because the First Amended CC & Rs, though invalid, did not violate the terms of the Sale Agreement.

█ When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. *State v. Barnett,* 133 Idaho 231, 234, 985 P.2d 111, 114 (1999). An unambiguous contract will be given its plain meaning. *Id.* The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. *Opportunity, L.L.C. v. Ossewarde,* 136 Idaho 602, 607, 38 P.3d 1258, 1263 (2002) (citing *Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980)). In determining the intent of the parties, this Court must view the contract as a whole. *Daugharty v. Post Falls Highway Dist.,* 134 Idaho 731, 735, 9 P.3d 534, 538 (2000). If a contract is found ambiguous, its interpretation is a question of fact. *Id.* (citing *Electrical Wholesale Supply Co., Inc. v. Nielson,* 136 Idaho 814, 823, 41 P.3d 242, 251 (2002)). Whether a contract is ambiguous is a question of law. *Boel v. Stewart Title Guar. Co.,* 137 Idaho 9, 13, 43 P.3d 768, 772 (2002) (citing *Terteling v. Payne,* 131 Idaho 389, 391–92, 957 P.2d 1387, 1389–90 (1998)).

Whether the facts establish a violation of the contract is a question of law reviewed de novo. *Barnett,* 133 Idaho at 234, 985 P.2d at 114 (citing *United States v. Plummer,* 941 F.2d 799, 803 (9th Cir.1991)).

The original recorded CC & Rs, which were incorporated by reference into the Sale Agreement, provided in relevant part:

> GENERAL COVENANTS AND RESTRICTIONS: That all lots of said Huckleberry Estates Subdivision shall be subject to the following covenants, conditions, and restrictions, that by acceptance of any such conveyance, the grantee or grantees and their heirs, executors, administrators, successors, and assigns agree to the conditions described as follows:
>
> ✱✱✱✱✱✱
>
> z. AMENDMENTS: Any amendment to these covenants, conditions, and restrictions shall be approved in writing by at least seventy-five percent of the lot owners.

The Shawvers received a copy of the original recorded CC & Rs on August 1, 2000. On August 17, 2000, Scott and Mary Shawver both signed the Sale Agreement with Huckleberry. Paragraph five of the Sale Agreement provided that "buyer hereby acknowledges copies of the recorded plat & CCR's." Paragraph sixteen provided that the Shawvers were responsible to obtain and review the applicable CC & Rs. Pursuant to paragraph sixteen, the Shawvers checked the corresponding "yes" box adjacent to this provision, indicating that they had in fact reviewed the applicable CC & Rs.

█ "A breach of contract occurs when there is a failure to perform a contractual duty." *Daniels v. Anderson,* 113 Idaho 838, 840, 748 P.2d 829, 831 (Ct.App.1987) (citation omitted). The Shawvers contend that Huckleberry breached the Sale Agreement by recording the First Amended CC & Rs because Huckleberry had a contractual duty to convey the property to the Shawvers subject only to the original recorded CC & Rs. This argument is inconsistent with the language of the Sale Agreement. Under the express terms of the Sale Agreement, the

Shawvers agreed to purchase property governed by restrictive covenants, which could be amended by written consent of seventy-five percent of the existing lot owners. Such agreements are valid under the law. *See* 20 AM.JUR.2D *Covenants* § 236 (1995) ("[T]he restrictive agreements in a tract of land may provide for a method of abrogating or modifying such agreements, as, for example, by vote of a certain proportion of the property owners."). The Shawvers had no right under the Sale Agreement to override the amendment provision or to avoid compliance in the event amendments were properly adopted. "Courts do not possess the roving power to rewrite contracts in order to make them more equitable." *Smith v. Idaho State Univ. Fed. Credit Union,* 114 Idaho 680, 684, 760 P.2d 19, 23 (1988) (citation omitted). The Shawvers' position that the Sale Agreement was subject only to the original recorded CC & Rs is contrary to the agreement they made.

The Shawvers also claim that Huckleberry's conduct constituted a breach of the covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract. *Idaho Power Co. v. Cogeneration, Inc.,* 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000). No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties. *See First Sec. Bank of Idaho v. Gaige,* 115 Idaho 172, 176, 765 P.2d 683, 687 (1988); *Clement v. Farmers Ins. Exch.,* 115 Idaho 298, 300, 766 P.2d 768, 770 (1988) (an implied covenant of good faith and fair dealing cannot override an express provision in a contract). The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement, and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract. *See Idaho First Nat. Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 289, 824 P.2d 841, 863 (1991).

Under the express provisions of the Sale Agreement, amendments to the existing CC & Rs could be adopted upon written consent of at least seventy-five percent of the existing lot owners. To imply that Huckleberry was obligated to perform the Sale Agreement subject only to the original recorded CC & Rs would be contrary to the terms of the contract negotiated and executed by the parties.

Huckleberry's first recorded amendments to the CC & Rs were unenforceable against the Shawvers because they were not adopted in compliance with the applicable amendment provision. This action did not breach the implied covenant of good faith. As applied to the Sale Agreement, the First Amended CC & Rs were simply void, and therefore the Shawvers were not deprived of any benefit under their contract with Huckleberry.

The district court's determination that Huckleberry was in breach of the Sale Agreement was in error.

## IV.

## THE DISTRICT COURT ERRED IN HOLDING THAT THE SECOND AMENDED CC & RS DID NOT APPLY TO THE LOT THE SHAWVERS WISH TO PURCHASE FROM HUCKLEBERRY

Huckleberry claims that the district court erred in holding that the Second Amended CC & Rs did not apply to the Shawvers' purchase of the lot in question. Specifically, Huckleberry claims that under the express terms of the parties' agreement, amendments to the original CC & Rs could be adopted at any time upon the written consent of at least seventy-five percent of the existing lot owners.

The Second Amended CC & Rs were adopted and recorded on July 23, 2001. A copy of these amendments, along with the lot owners' notarized signatures, were made part of the record before the district court. Huckleberry argues that the district court's order in this case essentially redrafted the parties' agreement by allowing the Shawvers to avoid compliance with the Second Amended CC & Rs or other future amendments despite their unchallenged validity or application to the property in question.

The Shawvers do not challenge the validity of the amendment provision contained in the

original recorded CC & Rs or the fact that the Second Amended CC & Rs were properly adopted in compliance with that provision. They contend that the adoption of the Second Amended CC & Rs prevented Huckleberry from being able to convey the property according to the terms of the Sale Agreement.

The Shawvers also claim that they are entitled to recoup damages associated with complying with the Second Amended CC & Rs in the event this Court holds that they are applicable in this case. According to the Shawvers, their damages amount to $16,000, the cost of increasing the size of their home to make it meet the requirements of the Second Amended CC & Rs. The Shawvers request that the district court be directed to consider and enter judgment for that additional cost should the Shawvers be required to comply with the Second Amended CC & Rs.

### A. Standard of Review

■■■ This Court exercises free review over the district court's conclusions of law. *Trimble v. Engelking,* 134 Idaho 195, 196, 998 P.2d 502, 503 (2000). The standard of review of a non-jury district court's findings of fact is set forth in Idaho Rule of Civil Procedure 52(a). *Williamson v. City of McCall,* 135 Idaho 452, 19 P.3d 766, 769 (citing I.R.C.P. 52(a)). I.R.C.P. 52(a) provides in pertinent part:

> In all actions tried upon the facts without a jury ... the court shall find the facts specifically and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. Findings of fact shall not be set aside unless clearly erroneous. In application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses that appear before it.

*Id.* (quoting I.R.C.P. 52(a)). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did. The Court inquires whether the findings of fact are supported by substantial and competent evidence." *Id.* (citation omitted). "This Court will not substitute its view of the facts for the view of the district judge." *Id.* (citation omitted). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.*

### B. The district court erred by determining that performance of the Sale Agreement was subject only to the original recorded CC & Rs.

■■■ The district court concluded that the Shawvers were entitled to specific performance of the Sale Agreement and that "[t]his purchase and sale transaction is subject to the Declaration of Protective Covenants, Conditions, and Restrictions for Huckleberry Estates Subdivision recorded July 21, 2000 as Instrument No. 100057017, only, as and for [sic] restrictive covenants." Huckleberry claims that the district court's decision constitutes error because it effectively prevents the adoption and enforcement of future amendments to the existing CC & Rs with regard to the Shawvers only and violates the express terms of the parties' agreement.

■■■ Idaho recognizes the validity of covenants that restrict the use of private property. *Nordstrom v. Guindon,* 135 Idaho 343, 345, 17 P.3d 287, 290 (2000) (citing *Brown v. Perkins,* 129 Idaho 189, 192, 923 P.2d 434, 437 (1996)). When interpreting such covenants, the Court generally applies the same rules of construction as are applied to any contract or covenant. *Id.* However, because restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed. *Post v. Murphy,* 125 Idaho 473, 475, 873 P.2d 118, 120 (citing *Thomas v. Campbell,* 107 Idaho 398, 404, 690 P.2d 333, 339 (1984)). Further, all doubts are to be resolved in favor of the free use of land. *Id.*

■■■ Beginning with the plain language of the covenant, the first step is to determine whether or not there is an ambiguity. *Brown,* 129 Idaho at 193, 923 P.2d at 437 (citing *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 201, 899 P.2d 411, 414 (1995)). "Words or phrases that have established definitions in common use or settled legal meanings are not rendered ambiguous

merely because they are not defined in the document where they are used." *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414. Rather, a covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue. *Post*, 125 Idaho at 475, 873 P.2d at 120 (citing *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980)). To determine whether or not a covenant is ambiguous, the court must view the agreement as a whole. *Brown*, 129 Idaho at 193, 923 P.2d at 438.

▮ The second step in contract or covenant construction depends on whether or not an ambiguity has been found. If the covenants are unambiguous, then the court must apply them as a matter of law. *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414. "Where there is no ambiguity, there is no room for construction; the plain meaning governs." *Post*, 125 Idaho at 475, 873 P.2d at 120. Conversely, if there is an ambiguity in the covenants, then interpretation is a question of fact, and the Court must determine the intent of the parties at the time the instrument was drafted. *Brown*, 129 Idaho at 193, 923 P.2d at 438.

Both parties agree that the original recorded CC & Rs were applicable when the Sale Agreement was executed. The original recorded CC & Rs provide in relevant part:

GENERAL COVENANTS AND RESTRICTIONS: That all lots of said Huckleberry Estates Subdivision shall be subject to the following covenants, conditions, and restrictions, that by acceptance of any such conveyance, the grantee or grantees and their heirs, executors, administrators, successors, and assigns agree to the conditions described as follows:

\*\*\*\*\*

z. AMENDMENTS: Any amendment to these covenants, conditions, and restrictions shall be approved in writing by at least seventy-five percent of the lot owners.

Paragraph z simply states that any amendment may be adopted upon the written consent of at least seventy-five percent of the existing lot owners. Because there is no ambiguity in this language, "there is no room for construction, and the plain meaning of the language governs." *Sun Valley Ctr. v. Sun Valley Co.*, 107 Idaho 411, 413, 690 P.2d 346, 348 (1984). Huckleberry concedes that the First Amended CC & Rs were invalid because they were not adopted in compliance with the amendment provision. However, Huckleberry contends that the Second Amended CC & Rs, which were recorded on July 23, 2001, were properly adopted by over seventy-five percent of the existing lot owners. These amendments are currently in effect throughout the Subdivision. The issue is whether the district court erred in declaring that the Second Amended CC & Rs had no application to the parties' agreement in this case.

The district court concluded that "the Shawvers are entitled to specific performance of the [Sale Agreement], which is subject to the original CC & R's. The subsequent amendments have no application to that agreement." The Shawvers subsequently filed a motion to alter or amend the judgment to include a finding that a second set of house plans submitted by the them in January 2001 as part of an attempt to settle this matter, comply in all respects with the First Amended and Second Amended CC & Rs. The district court denied the motion, stating that, "[w]hile there was some discussion of the Second Amended CC & R's at trial in the context of whether specific performance as originally requested by Plaintiffs should be granted, the issue of different plans and compliance with any of the amended CC & R's was not litigated."

▮ Under the terms of the Sale Agreement, the Shawvers acknowledged that they had received and reviewed a copy of the applicable CC & Rs. When the Shawvers and Huckleberry negotiated and executed the Sale Agreement, presumably they expected that it would be fully valid and enforceable. *See Coeur d'Alene Lakeshore Owners & Taxpayers v. Kootenai County*, 104 Idaho 590, 595, 661 P.2d 756, 761 (1983) (courts presume that parties to a contract intended a lawful construction of that contract). Because the Shawvers had notice of the applicable CC & Rs, they were bound to abide by them. *See*

20 Am.Jur.2d *Covenants* § 267 (1995) ("A purchaser with notice of restrictive covenants upon land is bound by such restrictions, although they are not such as in strict legal contemplation run with the land."). The practical effect of the district court's decision is to release the Shawvers from their legal obligation to abide by future amendments regardless of the validity or necessity of such amendments. "Courts possess no roving commission to rewrite contracts. Equity will not intervene to change the terms of a contract unless it produces unconscionable harm, is unlawful or violates public policy." *Smith v. Idaho State Univ. Fed. Credit Union*, 114 Idaho 680, 684, 760 P.2d 19, 23 (1988) (quoting *Quintana v. Anthony*, 109 Idaho 977, 981, 712 P.2d 678, 682 (Ct. App. 1985). A parallel measure of judicial restraint prohibits the judicial rewriting of restrictive covenants.

The district court's order eliminates the terms of the original recorded CC & Rs with respect to future amendments. The trial court's order granting specific performance of the Sale Agreement subject only to the original recorded CC & Rs is in error. There is doubtless a point when a party has changed his or her position in reliance upon the covenants in effect to a degree that enforcement of an amendment would be precluded, but that point was not demonstrated in this case. The issue of whether the Shawvers could have rescinded the Sale Agreement is not before this Court.

### V.

### HUCKLEBERRY IS ENTITLED TO ATTORNEY FEES AND COSTS

Idaho Appellate Rule (I.A.R.) 41 provides the procedure for requesting attorney fees on appeal. I.A.R. 41 allows this Court to award attorney fees only if permitted by some other statutory or contractual authority; it is not authority alone for awarding fees. *Robbins v. County of Blaine*, 134 Idaho 113, 120, 996 P.2d 813, 820 (2000). I.A.R. 41 requires that the request for attorney fees on appeal be made in the first brief from the respective party. I.A.R. 35(a)(5) and (6) also require that the requesting party put the request for fees in a separate section after the issues presented section and the request be discussed in the argument section.

These procedural requirements have been met as Huckleberry made the request after the issues on appeal section in their first brief and the request was discussed in the argument section.

In this case the authority permitting the recovery of attorney fees and costs is contractual. Paragraph fourteen of the Sale Agreement provides that, "[i]f either party initiates or defends any arbitration or legal action or proceedings, which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal." Huckleberry is the prevailing party on appeal and is awarded attorney fees and costs associated with the original trial as well as its appeal to this Court.

### VI.

### CONCLUSION

The decision of the district court is reversed. Attorney fees and costs are awarded to Huckleberry.

Chief Justice TROUT, Justices EISMANN and BURDICK concur.

Justice KIDWELL, dissents without opinion.