# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket Nos. 46144 & 46147

| | | |
|---|---|---|
| FIRST SECURITY CORPORATION, an Idaho corporation, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Boise, August 2019 Term |
| BELLE RANCH, LLC, an Idaho limited liability company; JUSTIN FLOOD STEVENSON, ELIZABETH BRETT STEVENSON, and RABO AGRIFINANCE, INC., | ) ) ) ) ) ) ) | Filed: October 28, 2019 Karel A. Lehrman, Clerk |
| Defendants-Respondents. | ) ) | |
| BELLE RANCH, LLC, an Idaho limited liability company, | ) ) ) | |
| Plaintiff-Respondent, | ) ) | |
| v. | ) ) | |
| MOUNTAIN WEST BANK, a Division of Glacier Bank; GBCI OTHER REAL ESTATE, LLC, | ) ) ) ) | |
| Defendants-Respondents, | ) ) | |
| and | ) ) | |
| SOUTH COUNTY ESTATES, LLC, an administratively dissolved Idaho limited liability company; PENSCO TRUST COMPANY F.B.O. RICHARD D. FOSBURY, IRA #F01EC; PENSCO TRUST COMPANY CUSTODIAN F.B.O., FIRST SECURITY CORP., and DOES 1-5, unknown persons who may claim an interest in the subject water rights, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

1

| | |
|---|---|
| **RICHARD D. FOSBURY, an individual,** | ) |
| | ) |
| **Plaintiff-Appellant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **BELLE RANCH, LLC an Idaho limited** | ) |
| **liability company; JUSTIN FLOOD** | ) |
| **STEVENSON, an individual; ELIZABETH** | ) |
| **BRETT STEVENSON, an individual; and** | ) |
| **RABO AGRIFINANCE, INC., a Delaware** | ) |
| **corporation,** | ) |
| | ) |
| **Defendants-Respondents.** | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Jonathan Brody, District Judge.

The judgment of the district court is <u>affirmed</u>.

McHugh Bromley, PLLC, Boise, for appellants First Security Corporation and Richard D. Fosbury. Christopher M. Bromley argued

Barker, Rosholt & Simpson, Boise, for respondents Belle Ranch, LLC, Justin Flood Stevenson, and Elizabeth Bret Stevenson. Albert P. Barker argued.

Ray Quinney & Nebeker, Salt Lake City, UT, for respondent Rabo Agrifinance, Inc. Michael D. Mayfield argued.

Lukins & Annis, Coeur d'Alene, for respondents Mountain West Bank and GBCI.

—————————

STEGNER, Justice.

This is a consolidated appeal involving contested water rights. The cases involve three separate actions: one brought by First Security Corporation and two others brought by Richard Fosbury to quiet title to their purported ownership of irrigation water rights to land owned by Belle Ranch, LLC.[1] It is agreed by all parties that partial decrees for the water rights were issued in the Snake River Basin Adjudication (SRBA) in the name of South County Estates, LLC. As South County's successors in interest, First Security and Fosbury argue that their interests in the

---

[1] In an effort to avoid confusion, it is important to point out that the Belle Ranch property at the heart of this dispute was owned by South County prior to it being ultimately purchased by Belle Ranch, LLC. Consequently, it is critical to understand there is a substantive and legal difference between the Belle Ranch *property* and Belle Ranch, *LLC*, which subsequently purchased the Belle Ranch *property* from GBCI Other Real Estate, LLC.

2

water rights are senior and therefore superior to the interest of Belle Ranch, LLC. Notwithstanding these claims, the district court quieted title to the water rights in question to Belle Ranch, LLC. First Security and Fosbury appeal. For the reasons set out, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts of this appeal are lengthy and complex. The opinion will initially outline the chain of title for all of the parties in this appeal. Next, it will detail the proceedings and documents filed with the Idaho Department of Water Resources. Finally, it will discuss the course of proceedings in the case.

### A.    The Belle Ranch property.

The real property to which the water rights in dispute are appurtenant (the Belle Ranch property) is located in Blaine County, Idaho. The property consists of 289 acres and has appurtenant water rights to irrigate those acres.[2] These water rights are discussed as fractions of the entire 289 acres. For example, $1/289^{ths}$ of the water right would correspond to the irrigation rights associated with one acre out of the total 289 acres of the Belle Ranch property.

### B.    South County, Mountain West Bank, GBCI, and Belle Ranch, LLC.

South County Estates, LLC, was formed in 2003 and administratively dissolved in 2011. John Scherer was the managing member of the LLC, and Fosbury and Charles Holt were members of the LLC. In 2003, South County acquired what is now the Belle Ranch property along with the appurtenant water rights. It then filed a notice of change in water right ownership with the Department in the name of South County. On October 14, 2005, South County executed a mortgage (First Mortgage) encumbering the Belle Ranch property and appurtenant water rights. Mountain West Bank (MWB) was the holder of the mortgages.[3] That mortgage was subsequently modified in December 2006. Later, on June 13, 2008, South County executed another mortgage (Second Mortgage) with MWB encumbering the Belle Ranch property and the appurtenant water rights. On October 17, 2008, South County executed another mortgage (Third Mortgage), also with MWB, further encumbering the Belle Ranch property and its appurtenant water rights.

---

[2] The water rights are enumerated as follows: 37-481C, 37-482H, 37-483C, 37-577BT, 37-2630.

[3] MWB is a party to this consolidated appeal; however, MWB filed a disclaimer to "any interest in the water rights that are subject of this action . . . ."

In 2010, South County defaulted on its mortgages with MWB. South County executed a deed in lieu of foreclosure to MWB on June 17, 2010. The deed in lieu provided that the conveyance included all appurtenances, including "all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or Irrigation rights)[.]" In conjunction with the deed in lieu, South County executed an Estoppel Certificate, which likewise stated that all water rights were included in the conveyance.

On the same day, MWB transferred the Belle Ranch property to GBCI Other Real Estate, LLC (GBCI).[4] GBCI executed a special warranty deed and MWB executed a quitclaim deed, conveying the Belle Ranch property and its appurtenant water rights to Belle Ranch, LLC. Belle Ranch, LLC, used loan proceeds from Rabo Agrifinance, Inc. (Rabo), to purchase the Belle Ranch property.

Ever since the conveyance to Belle Ranch, LLC, the LLC has been the owner of record of the Belle Ranch property, paid the assessments on the water rights, and diverted and continuously put the water to beneficial use.

**C.      South County's successors in interest.**

During the pendency of the SRBA, South County made seven conveyances of fractional portions of water rights to its managers or members and their affiliated entities, accounts, or holdings. Those conveyances are discussed below.

1.  Big Stick, LLC.

On December 7, 2007, South County executed a quitclaim deed to Big Stick, LLC, conveying 2.8/289ths of the water rights. Scherer was the managing member of both Big Stick and South County. On October 14, 2009, a Partial Release of Lien was executed from MWB to Big Stick. Big Stick later assigned its interest to Fosbury.[5]

2.  Charles Holt and his Individual Retirement Accounts (IRAs).

South County executed three separate quitclaim deeds in which it conveyed a total of 3/289ths of the appurtenant water rights to two different Holt IRAs (Holt IRA #H01NH and Holt IRA #H01NV). These conveyances were dated April 28, 2008, August 8, 2008, and April 8,

---

[4] GBCI is also a party to this consolidated appeal; however, GBCI too filed a disclaimer to "any interest in the water rights that are subject of this action . . . ."
[5] Big Stick and Holt filed a Notice of Substitution of Party in which the interests of Holt and Big Stick were assigned to Fosbury. I.A.R. 7. This Court granted the substitution of party and changed the caption.

2009. However, the deeds were not recorded until March 1, 2010.[6] On November 28, 2016, the Holt IRAs conveyed 3/289$^{ths}$ of the water rights via quitclaim deeds to Charles Holt. Holt then assigned his interest to Fosbury.

    3.  <u>Richard Fosbury and his IRA.</u>

On March 17, 2008, South County executed a quitclaim deed conveying 1/289$^{ths}$ of the water rights to Fosbury's IRA. The deed was not recorded until March 1, 2010. On October 14, 2009, a Partial Release of Lien for the First Mortgage was executed by MWB's representative to the Fosbury IRA. There was no mention of either the Second or Third Mortgages being released by MWB. On September 28, 2008, South County executed another quitclaim deed to the Fosbury IRA conveying another 1/289$^{ths}$ of the water rights. This conveyance was also recorded on March 1, 2010. MWB also executed a partial release of that additional conveyance. Again, the release was only in relation to the First Mortgage and made no mention of either the Second or Third Mortgages. After these transfers, the Fosbury IRA purportedly owned 2/289$^{ths}$ of the water rights.

On November 11, 2016, the Fosbury IRA conveyed to Richard Fosbury 2/289$^{ths}$ of the water rights via quitclaim deeds. The deeds expressly conveyed the fractional water rights previously conveyed to the Fosbury IRA. After Big Stick and Holt assigned their interests to Fosbury, Fosbury purportedly owned 7.8/289$^{ths}$ of the water rights.

    4.  <u>First Security Corporation.</u>

On June 25, 2009, South County executed and recorded a quitclaim deed to Scherer and Holt conveying 7.5/289$^{ths}$ of the total water rights. A Partial Release of Lien was issued by MWB on June 25, 2009. On June 10, 2009, fifteen days *before* the water right was conveyed to them, Scherer and Holt executed a mortgage in favor of IIB for 7.5/289$^{ths}$ interest in the total water rights.[7] The partial release that was previously issued by MWB was recorded by IIB on June 25, 2009.[8]

After defaulting on their loan with IIB, Scherer and Holt executed a Non-Merger Deed in Lieu of Foreclosure conveying ownership of 7.5/289$^{ths}$ of the water rights to IIB on September 2,

---

[6] With the exception of the quitclaim deed to Big Stick, all of South County's conveyances were recorded on the same date, March 1, 2010, nearly two years after the deeds had been executed.

[7] The record is unclear how Scherer and Holt could execute a mortgage encumbering a water right that had not yet been conveyed to them.

[8] The record is unclear as to why it was IIB that recorded the Partial Release of Lien and not Scherer or Holt.

2014. On October 15, 2014, IIB executed a warranty deed conveying the same 7.5/289$^{\text{ths}}$ of the water rights to First Security.

5. Summary of the water rights at the time of this appeal.

After all of the conveyances, the claimed water rights were as follows: Fosbury purportedly owned 7.8/289$^{\text{ths}}$ of the total water rights. First Security purportedly owned 7.5/289$^{\text{ths}}$ of the total water rights. Fosbury and First Security concede that Belle Ranch, LLC, owns no less than 273.7/289$^{\text{ths}}$ of the total water rights. As a result, only 15.3/289$^{\text{ths}}$ of the total water rights are at issue in these appeals.

**D.    The SRBA and the Department's filings and proceedings.**

1. Notices of ownership and Partial and Final Decrees by the SRBA court.

In 1988, G. Chapman Petersen filed notices of claims in the SRBA for the five water rights appurtenant to the Belle Ranch property. After the Belle Ranch property was conveyed to South County, South County filed a change of ownership in the water rights appurtenant to the property with the Department, changing the name of the owner of record to South County.

In early 2007, the Director of the Department issued recommendations in the SRBA, recommending that the water rights be decreed authorizing 289 acres of irrigation for beneficial use on the Belle Ranch property. South County was listed as the claimant of those water rights. On June 28, 2010, the Special Master of the SRBA issued a Special Master's Report and Recommendation, recommending that the water rights be decreed to South County. On July 9, 2010, an amended report recommended the same finding.

On August 31, 2010, the district court in the SRBA issued partial decrees for the water rights, decreeing all five of the water rights in the name of South County. The partial decrees were served on South County and included a Rule 54(b) certificate, meaning they were final adjudications and consequently appealable decisions. Despite the decrees being issued after the conveyances to Scherer, Holt, and Fosbury, the partial decrees were never challenged by them.

After acquiring the property in June of 2010, MWB filed a notice of change in water right ownership with the Department on July 27, 2011. On September 13, 2011, the Department acknowledged the change in ownership and modified its records to note MWB as the owner of record. On February 28, 2012, Belle Ranch, LLC, submitted a notice of change in water right ownership with the Department to reflect that Belle Ranch, LLC, now owned the entire water

6

rights. The Department acknowledged the change in ownership and modified its records on March 7, 2012.

Around April of 2012, Belle Ranch, LLC, filed an application for transfer of water rights, seeking to change the place of use associated with the water rights. After the Department published the application for transfer to allow others to protest the transfer of use, no protests were filed by any of the appellants or any of their predecessors in interest in this case. The Department then approved the transfer of the place of use.

On August 26, 2014, the SRBA court issued its Final Unified Decree.[9] The Final Unified Decree stated that it superseded all prior water rights decrees and general provisions within the Snake River Basin water system except those expressly provided for by partial decree. *Final Unified Decree* at 12, ¶ 11. Further, the decree stated, "[t]his Final Unified Decree shall not be construed to supersede or affect otherwise . . . any administrative changes to the elements of a water right completed after the entry of a partial decree but prior to the entry of this Final Unified Decree[.]" *Id.* at ¶ 13. Only MWB and Belle Ranch, LLC, filed any administrative changes during this referenced timeframe.

2. <u>Administrative changes following the Final Unified Decree.</u>

IIB initially asserted a claim to the water rights in 2014 by sending a letter to Belle Ranch, LLC, and to the LLC's mortgage holder, Rabo. Counsel for Belle Ranch, LLC, responded to the letter explaining that IIB had no valid interest in the water rights. IIB never responded and eventually transferred any interest it had to First Security on October 15, 2014, by warranty deed.

On October 28, 2014, First Security filed a Notice of Change in Water Right Ownership with the Department. First Security never provided notice to Belle Ranch, LLC, even though Belle Ranch, LLC, was the owner of record at the time that First Security filed this notice. The Department processed the ownership change and split the water rights, creating the following new water rights: 37-22915, 37-22916, 37-22917, 37-22918, and 37-22919 (the "split water rights").

On March 17, 2016, more than a year after the water rights had been split by the Department, Belle Ranch, LLC, sent a letter to the Department challenging the Department's

---

[9] The Final Unified Decree and its attachments are available at http://srba.idaho.gov/finaldecree.htm.

action, asserting that the SRBA had quieted title in the water rights to South County and that Belle Ranch, LLC, had acquired all of South County's interest in the water rights. On March 29, 2016, the Department emailed Belle Ranch, LLC, and First Security stating that it would change the owner of the split water rights to South County and that the parties could "quiet title to the water rights in district court."

Following the email, Big Stick, Fosbury's IRA, and Holt's IRA filed several notices of change in ownership with the Department. However, the Department emailed counsel for those parties and notified them that it would not process the ownership changes absent further instruction from a district court.

### E.     Course of Proceedings.

#### 1.     Initial pleadings.

On December 2, 2016, First Security filed a quiet title action against Belle Ranch, LLC, to quiet title to $7.5/289^{ths}$ of the water rights appurtenant to the Belle Ranch property. On December 21, 2016, Belle Ranch, LLC, filed a quiet title action against the prior owner, South County, its members and managers, First Security, MWB, and GCBI to quiet title to $15.3/289^{ths}$ of the water rights in question. A third quiet title action was filed by Big Stick, Fosbury, and Holt against Belle Ranch, LLC, and Rabo on December 28, 2016, seeking $7.8/289^{ths}$ of the total water rights. The district court consolidated these quiet title actions.

#### 2.     Cross motions for summary judgment.

The parties filed motions and cross motions for summary judgment. The district court heard oral argument and took the matter under advisement. On October 30, 2017, the district court issued a written memorandum decision. The district court quieted title to Belle Ranch, LLC, in all but $2.8/289^{ths}$ of the water rights. The district court focused on the timing of the conveyances of the property and the effect of the unreleased mortgages. The district court concluded that Belle Ranch, LLC, was the rightful owner of $286.2/289^{ths}$ of the total water rights because there were no genuine issues of material fact regarding the LLC's ownership of that amount of the water rights. However, the district court concluded that there were genuine issues of fact that precluded summary judgment on the $2.8/289^{ths}$ of the water rights claimed by Big Stick. Thus, only that issue remained for trial.

3. Motion for Reconsideration.

Big Stick, Fosbury, Holt, and First Security filed a Motion for Reconsideration on November 13, 2017. While the motion to reconsider was under advisement, this Court issued its decision in *Eden v. State*, 164 Idaho 241, 244, 429 P.3d 129, 132 (2018). The district court concluded that *Eden* and its discussion regarding *res judicata* and collateral estoppel might be applicable to the present case. Therefore, it asked the parties for additional briefing regarding the effects of *res judicata* on the present case.

On April 23, 2018, the district court issued its memorandum decision on the motion to reconsider. The district court confirmed its original decision. In addition, it also found that *res judicata* barred all of the claims brought by Big Stick, Fosbury, Holt, and First Security. Judgment was entered on May 8, 2018, quieting title to the entirety of the water rights in the name of Belle Ranch, LLC.

4. Appeal proceedings.

First Security appealed the decisions by the district court. Fosbury, Holt, and Big Stick filed a separate notice of appeal. On September 6, 2018, Fosbury, Holt, and Big Stick filed a Notice of Substitution of Party with this Court in which Big Stick and Holt assigned their "interests in the case" to Fosbury. On September 24, 2018, this Court issued an Order Granting Substitution of Party and amended the caption to include only Fosbury and First Security as appellants. On October 4, 2018, counsel for First Security substituted as counsel for Fosbury. This Court consolidated the appeals.

## II. STANDARD OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 804–05, 353 P.3d 420, 425–26 (2015) (citing *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 890, 243 P.3d 1069, 1078 (2010)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

When the trial court will act as the factfinder, the trial court "is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Tiller White, LLC v.*

*Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016) (quoting *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 361, 93 P.3d 685, 692 (2004)). Such inferences drawn by the trial court are upheld if reasonably supported by the record. *Id.* (citing *Beus v. Beus*, 151 Idaho 235, 238, 254 P.3d 1231, 1234 (2011)).

"When deciding the motion for reconsideration, the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). "Likewise, when reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Id.* Thus, the summary judgment standard of review will apply to this Court's review of the motion for reconsideration.

### III. ANALYSIS

**A.     The claims of First Security and Fosbury are precluded by *res judicata*.**

The application of *res judicata* is a question of law over which this Court exercises free review. *Black Canyon Irrigation Dist. v. State*, 163 Idaho 144, 150, 408 P.3d 899, 905 (2018) (citing *Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007)). "*Res judicata* is an affirmative defense and the party asserting it must prove all of the essential elements by a preponderance of the evidence." *Ticor Title Co.*, 144 Idaho at 122, 157 P.3d at 616 (citing *Foster v. City of St. Anthony*, 122 Idaho 883, 890, 841 P.2d 413, 420 (1992)).

> Claim preclusion "bars a subsequent action between the same parties upon the same claim or upon claims 'relating to the same cause of action.'" Under this doctrine, a claim is also precluded if it could have been brought in the previous action, regardless of whether it was actually brought, where: (1) the original action ended in final judgment on the merits, (2) the present claim involves the same parties as the original action, and (3) the present claim arises out of the same transaction or series of transactions as the original action.

*Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012) (internal citations omitted). When the three elements are established, claim preclusion bars "every matter offered and received to sustain or defeat the claim *but also as to every matter which might and should have been litigated in the first suit*." *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 437, 849 P.2d 107, 110 (1993) (italics added) (quoting *Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 553, 208 P. 241, 242–43 (1922)).

10

1. There was a final judgment on the merits.

Here, the parties do not dispute that there was a final judgment on the merits. "A general adjudication . . . is '*conclusive* as to the nature of *all rights* to the use of water in the adjudicated water system . . . and for the administration of those rights.'" *Black Canyon Irrigation Dist.*, 163 Idaho at 150–51, 408 P.3d at 905–06 (italics in original) (quoting I.C. § 42-1401A(5)).

Here, there was a final judgment on the merits in 2010, when the SRBA court issued partial decrees and certified them as final under Rule 54(b) of the Idaho Rules of Civil Procedure. Those partial decrees were final adjudications of all the claims, except for those properly claimed under a subsequent administrative procedure. *Final Unified Decree* at 12, ¶ 11. Further, those "partial decrees were incorporated into the SRBA's Final Unified Decree, which 'is binding against all persons[.]'" *See Black Canyon Irrigation Dist.*, 163 Idaho at 150, 408 P.3d at 905. No objection was made to the water rights as they were decreed in the SRBA. It was not until 2014 that First Security filed any notice of a change in ownership to which Belle Ranch, LLC, objected. Based on these facts, the district court did not err in concluding that there was a final judgment on the merits.

2. Due to the nature of the claims arising in a general adjudication of water rights, the identity of the parties has little relevance. Regardless, this element is satisfied.

Generally, for *res judicata* to apply, the proceedings must involve "the same parties or their privies." *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618 (citing *Foster*, 122 Idaho at 888, 841 P.2d at 418). As noted above, a general adjudication is conclusive as to the nature of all rights and involves the judicial determination of the rights of all persons within that adjudication. I.C. § 42-1401A(5).

> The Legislature's definition of general adjudication thus appears to give the identity of parties requirement little relevance, if any, in this context. . . . Like a general adjudication under section 42-1401A(5), a final judgment in a proceeding where the court has *in rem* jurisdiction bars subsequent proceedings arising from the same transaction or occurrence already litigated, absent an identity of parties requirement, because *in rem* proceedings are brought against property, not parties. A general adjudication, like an *in rem* proceeding, is brought against property, not parties.

*Black Canyon Irrigation Dist.*, 163 Idaho at 151, 408 P.3d at 906 (citations omitted). In other words, in a general adjudication, the identity of the parties has little relevance. As this case

11

involves a general adjudication, *res judicata* would still apply even if the parties in the previous litigation were not identified.

However, it is worth noting that all parties involved in this case were on notice pursuant to Idaho Code section 42-1408(2). Further, all parties derive their ownership of the water rights from property that was previously owned by South County and was deeded away in various conveyances. South County was clearly a party in the SRBA as it was a claimant to the water rights and partial decrees were entered in its name. I.C. § 42-1401A(6) ("'Party' means any person who is a claimant or any person who is served or joined.") "A successor in interest is traditionally considered to be in privity with the predecessor party." *Silver Eagle Mining Co. v. State*, 153 Idaho 176, 180, 280 P.3d 679, 683 (2012) (citation omitted). Consequently, all parties involved in this appeal are in privity with South County and, therefore, are the same parties that were involved in the previous adjudication.

        3.   <u>The claims are the same claims that were adjudicated in the SRBA.</u>

"A critical component in deciding whether claims are the same for purposes of res judicata is that the subsequent or present claim must be one that arose out of the same cause of action and should have been litigated in the first suit." *Maravilla v. J.R. Simplot Co.*, 161 Idaho 455, 459, 387 P.3d 123, 127 (2016) (citations omitted).

First Security and Fosbury argue that ownership of the water right was never litigated in the SRBA, nor was it "required to be litigated." They contend that a "claim" and a "claimant" are not the same as "ownership" and an "owner." This issue is complicated by the use of the words in two Idaho Code sections: Idaho Code section 42-1411(2)(a) and Idaho Code section 6-401.

Under Idaho law, "[w]ater rights are defined by elements." *City of Blackfoot v. Spackman*, 162 Idaho 302, 306, 396 P.3d 1184, 1188 (2017) (citing I.C. § 42-1411(2)). The elements are established in Idaho Code section 42-1411(2). Those elements are as follows:

- the name and address of the claimant;
- the source of water;
- the quantity of water;
- the date of priority;
- the point(s) of diversion;
- the purpose of use;
- the period of use;
- the place of use;

- conditions on the exercise of any water right included in any decree, license, or approved transfer application; and
- such remarks and other matters as are necessary for definition of the right, for clarification of any element of a right, or for administration of the right by the director.

I.C. § 42-1411(2). With these elements in mind, we turn to a quiet title action under Idaho Code section 6-401. That section states,

> An action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim, *provided that all actions to adjudicate water rights and obtain a decree as to water source, quantity, point of diversion, place of use, nature of use, period of use, and priority as against other water users shall be brought under the provisions of chapter 14, title 42, Idaho Code.*"

I.C. § 6-401 (italics added). When comparing these two statutes, it is clear that the word "claimant" is not mentioned in the list of the elements of a water right that must be decided under Idaho Code Chapter 14, Title 42. It is based on this omission that First Security and Fosbury argue that the ownership of the water rights[10] could not have been determined in the SRBA; rather, they contend ownership must be decided through a quiet title action. However, this argument is unpersuasive.

First Security and Fosbury contend that the word "claimant" is not the same as "owner." However, Idaho Code section 42-1401A(1) defines "claimant" as "any person asserting *ownership* of rights to the use of water within the state of Idaho or on whose behalf *ownership* of rights to the use of water is asserted." I.C. § 42-1401A(1) (italics added). The legislature directed that decrees issued in the SRBA "shall contain or incorporate a statement of each element of a water right[.]" I.C. § 42-1412. When a court issues a decree in the name of a claimant, it is deciding whether that claimant's assertion of *ownership* is valid. Therefore, the issuance of the decree inextricably links a claimant with ownership of the water right. While it is true that being a "claimant" prior to a decree does not necessarily equal being an owner, once a decree is issued, "claimant" becomes inextricably linked with "ownership" if the decree awards the right to the water to the claimant. Therefore, First Security and Fosbury's arguments are misplaced.

---

[10] Notably, the State of Idaho "owns" all of the water within its borders. *See* I.C. § 42-101 ("All the waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state are declared to be the property of the state[.]"). When discussing ownership in this section, the opinion is referring to ownership of the right to use the water, not the water itself.

13

Here, the question of ownership was resolved in the SRBA. In 2010, after recommendations from the Department, the SRBA court entered a Partial Decree for each right identifying South County as the owner. If First Security and Fosbury (or their predecessors in interest) believed that they had an ownership interest in the water rights due to the conveyances from South County, those claims could and should have been brought during the pendency of the SRBA.

Idaho Code section 42-248(1) provides, in relevant part,

> [a]ll persons owning or claiming ownership of a right to use the water of this state, whether the right is represented by decree of the court, by claim to a water right filed with the department of water resources or by permit or license issued by the director of the department of water resources, *shall provide notice to the department of water resources of any change in ownership of any part of the water right* or of any change in the owner's mailing address, either of which occurs after June 30, 2000.

I.C. § 42-248(1) (italics added). Likewise, with regard to any ownership changes that occurred during the general adjudication, Idaho Code section 42-1409(6) provides,

> [e]ach purchaser[11] of a water right from the water system shall inquire of the director whether a notice of claim has been filed, and if not, shall file a notice of claim in accordance with this section. All claimants and purchasers shall provide the director written notice of any change in ownership or of any change in mailing address during the pendency of a general adjudication. All purchasers shall submit some evidence of ownership along with the notice of change of ownership.

I.C. § 42-1409(6).

Fosbury's claims are barred by *res judicata*. Fosbury (or his predecessors) purportedly obtained title to the water rights before the entry of the partial decree. As a "purchaser" of a water right, Fosbury was obligated by Idaho Code section 42-248(1) to notify the Department of the change of ownership. However, neither Fosbury nor his predecessors ever filed a notice of a change in ownership. Further, neither Fosbury nor his predecessors ever inquired whether a notice of claim had been filed; nor did they file a claim of ownership during the pendency of the SRBA. In fact, Fosbury never asserted an ownership of the water right until 2016, nearly eight years after he purportedly acquired title to the water rights. Had Fosbury timely complied with the statutes, administrative adjudications could have occurred to ascertain whether Fosbury or his predecessors were the rightful owners of the water rights. Those administrative determinations

---

[11] Idaho Code section 42-1401A(9) defines "purchaser" as "any successor in interest of a claimant, whether the interest is acquired by purchase, gift, inheritance, or other means."

14

would later have been given effect by the Final Unified Decree. Therefore, because the actions could have been brought in the SRBA and were not, Fosbury's claims are barred.

First Security's claims are likewise barred by *res judicata*. First Security derives its claim from a warranty deed from IIB, which derived its interests from a non-merger deed in lieu of foreclosure from Scherer and Holt. Scherer and Holt derive their claims from a quitclaim deed issued to them by South County. Not one of First Security's predecessors in interest filed a notice of a change in ownership as required by Idaho Code section 42-248(1). Further, they failed to inquire into whether a notice of claim had been filed and they did not file a claim during the pendency of the SRBA. Accordingly, because the actions could have been brought in the SRBA and were not, First Security's claims are barred.

Finally, First Security and Fosbury are correct that ownership determinations of water rights may be pursued through quiet title actions; however, this does not foreclose the application of *res judicata* if the matter has previously been, or could have been, adjudicated, as we have determined it has in this case. *See Magic Valley Radiology*, 123 Idaho at 437, 849 P.2d at 110. As noted above, the claim to ownership of the water rights could have been asserted by Fosbury and First Security in the SRBA. Accordingly, the fact that a claim could have been brought under a different statute does not preclude the application of *res judicata.*

4. It was appropriate for the district court to quiet title in favor of Belle Ranch, LLC, because Belle Ranch, LLC, filed a notice of a change in ownership during the pendency of the SRBA.

First Security and Fosbury contend that if *res judicata* does apply, the district court erred in quieting title to Belle Ranch, LLC. Instead, the water rights should be decreed to South County because the LLC's claims would be precluded as well. However, that is not the case. "The Final Unified Decree shall not be construed to supersede or affect . . . any *administrative changes* to the elements of a water right after entry of a partial decree, but prior to the entry of this Final Unified Decree." *Final Unified Decree* at 12, ¶ 13 (italics added). Belle Ranch, LLC, did what First Security and Fosbury did not. It filed a notice of change of ownership after acquiring ownership of the land from GBCI. The notice was filed in February of 2012, after the partial decrees were issued but prior to the Final Unified Decree. Further, Belle Ranch, LLC, applied for a transfer of the water right to change the place of use, which the Department granted. Therefore, Belle Ranch, LLC, appropriately asserted its ownership during the pendency

15

of the SRBA. Consequently, the district court did not err in quieting title in favor of Belle Ranch, LLC.[12]

The district court did not err in determining that *res judicata* barred the claims of First Security and Fosbury. Accordingly, this Court affirms the district court's judgment quieting title to Belle Ranch, LLC. Given our holding that the claims of First Security and Fosbury are barred, it is unnecessary for us to reach the issues regarding the statute of limitations; the mortgages and conveyances; or the claims of equitable estoppel, quasi-estoppel, and waiver.

**B.      The district court did not err by including Rabo's security interest in its judgment.**

First Security and Fosbury contend that the district court erred in entering its judgment by stating, "Belle Ranch, LLC, an Idaho limited liability company, is the sole owner of the title to the following water rights: 37-481C, 37-482H, 37-483C, 37-577BT and 37-2630, *subject to the security interests of record of Rabo Agrifinance, Inc*." (Italics added).

However, as the district court quieted title to the entirety of the water rights to Belle Ranch, LLC, Rabo is the only entity with a security interest in those water rights. Rabo loaned Belle Ranch, LLC, the funds to purchase the Belle Ranch property. The mortgage was recorded. Therefore, Fosbury and First Security have not provided a reason to amend the judgment.

**C.      Belle Ranch, LLC, is not entitled to attorney fees.**

Belle Ranch, LLC, requests attorney fees and costs pursuant to Idaho Code section 12-121 and Idaho Appellate Rule 41. Idaho Appellate Rule 41 allows a party to claim attorney fees on appeal. However, the party must provide either a statutory or contractual basis of entitlement to attorney fees. Belle Ranch, LLC, asserts that it is entitled to attorney fees pursuant to Idaho Code section 12-121. That code section states, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation."

Belle Ranch, LLC, is the prevailing party. However, given the complex nature of this case and the questions regarding whether the SRBA's judgment was entitled to *res judicata*

---

[12] It is instructive, though not dispositive, to understand the facts underlying the claims of First Security and Fosbury. Belle Ranch, LLC, took possession of the Belle Ranch property in 2010. Since that time, Belle Ranch, LLC, has continuously put the water to beneficial use on the property. In 2014, the SRBA court, in its final adjudication, awarded all of the water appurtenant to the Belle Ranch property to Belle Ranch, LLC. It was only after the final adjudication of the SRBA that First Security and Fosbury claimed they were entitled to water that they had never put to beneficial use. There is also nothing in the record to suggest that if title to the water were quieted in their names, they could then somehow put it to beneficial use on the property to which it is appurtenant.

effect, the appeal was not brought frivolously, unreasonably, or without foundation. Therefore, we decline to award attorney fees to Belle Ranch, LLC, under this statutory provision.

Belle Ranch, LLC, is awarded costs as a matter of right under Idaho Appellate Rule 40 as the prevailing party.

## IV. CONCLUSION

We affirm the district court's judgment concluding that *res judicata* barred First Security and Fosbury from their claims to 15.3/289$^{\text{ths}}$ of the water rights appurtenant to the Belle Ranch property. Costs, but not attorney fees, are awarded to Belle Ranch, LLC.

Chief Justice BURDICK, Justices BEVAN, MOELLER and MELANSON, Pro Tem, CONCUR.